Alfred HASENFUS and Gale Hasenfus,
Individually and o/b/o Jamie Hasenfus,
Plaintiffs, Appellants,

v.

L. Roger LaJEUNESSE, et al.,
Defendants, Appellees.

No. 98–2149.

United States Court of Appeals,
First Circuit.

Heard April 5, 1999.

Decided April 29, 1999.

Tracie L. Adamson with whom Susan V. Wallace, Sumner H. Lipman, Robert J. Stolt, and Lipman & Katz, P.A. were on brief for appellants.

Deirdre M. Smith with whom Melissa A. Hewey and Drummond Woodsum & MacMahon were on brief for appellees L. Roger LaJeunesse, Paul Knowles, Carlo Kempton and Winthrop Board of Education.

Edward R. Benjamin, Jr. with whom Thompson & Bowie was on brief for appellee Town of Winthrop.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

This is an appeal from the district court's dismissal of a complaint filed by Alfred and Gale Hasenfus, on behalf of themselves and their minor child Jamie Hasenfus, arising out of Jamie's attempted suicide at school. The complaint set forth claims under 42 U.S.C. § 1983 and state law against the Town of Winthrop, Maine, and others. The facts alleged in the complaint are as follows.

In the spring of 1996, Jamie was a 14–year–old student in the 8th grade of the Winthrop Middle School. On May 2 of that year, Jamie was reprimanded by her teacher, Carlo Kempton, for misconduct during a physical education class on the

school softball field. Kempton told Jamie to return to the locker room. No one from the school staff was supervising the locker room. After returning to the locker room, Jamie tried to hang herself. Classmates found Jamie and called for emergency help. Jamie survived but, at first in a coma, spent several weeks in the hospital and was left with permanent impairments.

The complaint describes two other incidents as background to the attempted suicide. One was that Jamie had been raped when she was 13 and later underwent the further trauma of testifying against the rapist. School officials were aware of the rape. Jamie had reported it to the school nurse, Jackie Kempton (wife of the gym teacher, Carlo Kempton), and was later counseled by the school nurse and school guidance counselor. According to the complaint, Carlo Kempton knew or should have known of the rape and should not have sent Jamie "alone and unsupervised away from the area he was monitoring when he knew or should reasonably have known that she was despondent or distressed."

The other background event was that seven other students in the Winthrop Middle School had also attempted suicide in the three months prior to May 1996. Several of those attempts had occurred at school or school events, and Jamie apparently knew or was associated with at least two of those students. According to the complaint, the school failed to take various possible measures to cope with the epidemic, such as offering special counseling and monitoring programs within the school and providing more information to parents about the outbreak.

On April 30, 1998, just short of two years after Jamie's suicide attempt, the Hasenfus parents brought suit in the district court on behalf of Jamie and themselves. The defendants, in addition to the town and its board of education, included three individuals: the superintendent of schools, the principal of Jamie's school, and the gym teacher (Carlo Kempton).

The counts with which we are centrally concerned were based upon section 1983; they charged that specific acts and omissions by defendants acting under color of state law deprived Jamie of her Fourteenth Amendment rights, including, *inter alia*, rights to life and physical safety. The parents alleged the infringement of their right to family integrity.

The gist of the wrongful acts charged to the town, school board, superintendent, and principal were the failure to take a range of preventive actions listed in the complaint to cope with the suicide epidemic and, specifically as to Jamie, three narrower failures or mistakes discussed at the end of this opinion. Carlo Kempton's alleged wrongful acts were reprimanding Jamie in front of her classmates and sending her alone to the locker room. The same facts were alleged as violations of the Maine Constitution and as common law torts of negligence and negligent infliction of emotional distress.

The defendants moved to dismiss the section 1983 counts for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and asked that the state claims then be dismissed for lack of federal jurisdiction, *Wagner v. Devine*, 122 F.3d 53, 57–58 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 880, 139 L.Ed.2d 869 (1998). The magistrate judge recommended this course (with one variation irrelevant here), and the district court thereafter approved the recommendation. This appeal followed. On review, we take the factual allegations of the complaint as true, drawing reasonable inferences in favor of the plaintiffs. *Garita Hotel L.P. v. Ponce Fed. Bank, FSB,* 958 F.2d 15, 17 (1st Cir.1992).

The central question for us on this appeal is whether the conduct attributed to the defendants violates the federal Constitution so far as it protects against state action depriving one of life or liberty without "due process of law." The most familiar dimension of due process is protection of procedural rights, but the due process

concept has been extended by the Supreme Court to incorporate substantive protections. *See Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997). These include not only a selected set taken from the Bill of Rights but also a generalized protection sometimes labeled "substantive due process." Nowak and Rotunda, *Constitutional Law* §§ 11.3–11.4, at 374–93 (5th ed.1995).

In the district court and in their opening brief on appeal, the Hasenfuses argued forcefully that—contrary to the district court's view—the school had an affirmative duty to protect Jamie as a student entrusted to its care. In their reply brief, the Hasenfuses suddenly purport to abandon reliance on this theory, saying that they prefer to concentrate their appeal on Kempton's alleged danger-creating conduct. But elsewhere the reply brief itself returns to the allegation that school officials acted recklessly "by standing by throughout the suicide epidemic and doing nothing to identify at-risk students or to train personnel to effectively deal with these students at risk."

 In the complaint, the principal conduct charged against the defendants— apart from Kempton—was their *failure* to take measures to cope with the rash of attempted suicides at the school. Under common law, inaction rarely gives rise to liability unless some special duty of care exists. *Restatement (Second) of Torts* § 314 & cmt. a (1965). In *DeShaney v. Winnebago County,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court took the same view of substantive due process obligations, holding that ordinarily a state's failure to intervene to prevent harm to an individual by a private actor is not a constitutional violation.

 The main exceptions to this proposition are incarcerated prisoners or involuntarily committed mental patients for whom a set of unique rules has developed. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In such cases, failures to act—*e.g.,* to provide medical care or to stop one inmate from assaulting another—may comprise a due process or other constitutional violation because the state-imposed circumstance of confinement prevents such individuals from helping themselves.[1] Liability then arises under section 1983 if the plaintiff shows that the inaction was malicious or reflected the official's "deliberate indifference" to the welfare of the prisoner or inmate. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

 The plaintiffs urge that Jamie is similar to the prisoners and patients because school attendance is compulsory and because in some measure the school authorities act *in loco parentis.* The circuits that have confronted this issue have uniformly rejected this argument, holding that school children are not captives of the school authorities and the basic responsibility for their care remains with their parents.[2] The Hasenfuses' position is especially difficult to accept outright since the Supreme Court has come pretty close to rejecting it in a recent dictum which specifically contrasted *DeShaney:*

> [W]e do not, of course, suggest that
> public schools as a general matter

---

1. In the case of *convicted* prisoners, the Eighth Amendment is usually the constitutional provision referred to by the courts; but the substance of the protection is the same. *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 243–45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

2. *See Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1261 (10th Cir.1998); *Wyke v. Polk County Sch. Bd.,* 129 F.3d 560, 569 (11th Cir.1997); *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729, 732 (8th Cir.1993); *D.R. v. Middle Bucks Area Vocational Tech. Sch.,* 972 F.2d 1364, 1370–73 (3d Cir.1992) (en banc), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 272–73 (7th Cir.1990).

have such a degree of control over children as to give rise to a constitutional "duty to protect."

*Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). *See also Wyke*, 129 F.3d at 569.

Nevertheless, we are loath to conclude now and forever that inaction by a school toward a pupil could never give rise to a due process violation. From a common-sense vantage, Jamie is not just like a prisoner in custody who may be owed broad (but far from absolute) "duty to protect." But neither is she just like the young child in *DeShaney* who was at home in his father's custody and merely subject to visits by busy social workers who neglected to intervene. For limited purposes and for a portion of the day, students are entrusted by their parents to control and supervision of teachers in situations where—at least as to very young children—they are manifestly unable to look after themselves.

Thus, when *Vernonia* says that the schools do not "as a general matter" have a constitutional "duty to protect," perhaps in narrow circumstances there might be a "specific" duty. If Jamie had suffered a heart attack in the classroom, and the teacher knew of her peril, could the teacher merely leave her there to die without summoning help? If a six-year old child fell down an elevator shaft, could the school principal ignore the matter? Of course, school officials might be held liable in tort for such omissions, but common law liability aside, we hesitate to say for certain that substantive due process plays no role.

■ Yet even if we assume *arguendo* that in narrow circumstances the Supreme Court might find a due process obligation of the school or school employees to render aid to a student in peril—and *Vernonia* invites some caution—it would require pungent facts. The basic due process constraint, where substance and not procedure is involved, is against behavior so extreme as to "shock the conscience."

*County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1717–19, 140 L.Ed.2d 1043 (1998); *Rochin v. People of California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Outside of a few narrow categories, like the safeguarding of prisoners who have been wholly disabled from self-protection, this means conduct that is truly outrageous, uncivilized, and intolerable. *Lewis*, 118 S.Ct. at 1717.

■ The Supreme Court has regularly cited *Rochin*'s test with approval, *see Lewis*, 118 S.Ct. at 1717 (citing cases), but has almost never found it to be violated even where the state has affirmatively caused the harm. The few circuit cases that have found or posited possible liability under a shock-the-conscience rubric since *Rochin* have usually involved egregious facts. *E.g., Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir.1998) (rape by police officer in connection with car stop); *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir.1998) (57–day unlawful detention despite repeated requests). The omissions charged against the school authorities here are not even close to violating this outrageousness standard.

The outcome here would be no different under the more plaintiff-friendly standard developed in prison cases. Even under this standard, courts have been very reluctant to find prison guards liable for failing to prevent suicides unless confronted with specific imminent threats. *E.g., Bowen v. City of Manchester*, 966 F.2d 13, 16–18 (1st Cir.1992); *Manarite v. City of Springfield*, 957 F.2d 953 (1st Cir.), *cert. denied*, 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992). The Supreme Court has recently equated "deliberate indifference" in prison cases with *criminal* recklessness, *Farmer*, 511 U.S. at 837–39, 114 S.Ct. 1970, which is certainly not present here. Further, in *Lewis* the court declined to employ a deliberate indifference standard at all in a non-prison case where the situation involved a complicated balancing of factors and

choices rather than a clear right or wrong answer. *Lewis*, 118 S.Ct. at 1720.

■ Attempted suicide by school-age children is no slight matter; but it has no single cause and no infallible solution. *See* Governor's Task Force on Adolescent Suicide & Self–Destructive Behaviors, *Adolescent Suicide* 42–61 (1996). Different schools will react differently, depending upon resources, available information, and the judgment of school and public health authorities, who may fear making a bad situation worse. Absent a showing that the school affirmatively caused a suicide, the primary responsibility for safeguarding children from this danger, as from most others, is that of their parents; and even they, with direct control and intimate knowledge, are often helpless. Possibly there was school negligence here—one would need more information to make a judgment—but negligence is not a due process violation. *Daniels v. Williams*, 474 U.S. 327, 332–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ We turn now from the charge of inaction made against the town and other school officials to the claims against Carlo Kempton that do charge him with affirmative acts, specifically, the public reprimand of Jamie and her banishment to the unsupervised locker room. Here, *DeShaney* does not even arguably foreclose liability which is presumably why this issue is stressed in the reply brief. Where a state official acts so as to create or even markedly increase a risk, due process constraints may exist, even if inaction alone would raise no constitutional concern.[3] But once again, the behavior must be conscience-shocking or outrageous. *See Lewis*, 118 S.Ct. at 1717–19.

■ Kempton reprimanded a 14–year-old student for misbehavior and sent her out of class, something that occurs pretty regularly at schools across the country. For the first time at oral argument, plaintiffs' counsel described the circumstances of Jamie's dismissal from the gym class. Counsel said that several of Jamie's classmates had been harassing Jamie about the rape she had suffered and about her decision to testify against the perpetrator. In response to the harassment on this occasion, Jamie became highly agitated, shouting obscenities and threatening unspecified acts of violence against those around her.

■ On appeal, the granting of a motion to dismiss is tested against the factual allegations in the complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Even if these additional facts had been mentioned in the complaint—and they were not—it is not alleged that Jamie threatened to kill herself then or at any other time known to Kempton. At most, he may have known that she had suffered a rape a year before and that some *other* students at the school had attempted suicide. It would be hard to wrest even a claim of negligence out of these facts. To say that Kempton acted maliciously to cause harm to Jamie, or otherwise acted in a way that should shock the conscience, is not a remotely plausible interpretation of the facts alleged in the complaint and at oral argument.

Only one circuit case cited to us has found a triable issue on anything remotely like these facts and its own facts were more aggravated. In *Armijo*, 159 F.3d 1253, school officials sent home a 16–year-old special education student for violent behavior at school. The student had earlier threatened to kill himself and, contrary to school policy, the officials did not notify his parents that he had been sent home, where the student had access to firearms—a fact school officials were alleged to have known. Alone at home, the stu-

---

3. This danger-creation theory, building tenuously on a footnote in *DeShaney* distinguishing such a situation from *DeShaney* itself, *see DeShaney*, 489 U.S. at 201 n. 9, 109 S.Ct. 998, has been adopted in several circuits, *see*

*Dwares v. City of New York*, 985 F.2d 94, 98–99 (2d Cir.1993); *Ross v. United States*, 910 F.2d 1422, 1429–34 (7th Cir.1990); *cf. Frances–Colon v. Ramirez*, 107 F.3d 62, 64 (1st Cir.1997).

dent shot himself. His parents then sued, alleging *inter alia* a substantive due process claim, and the case went to the Tenth Circuit on an interlocutory appeal.

The Tenth Circuit held that *DeShaney* barred any affirmative duty to protect based on a "custodial relationship" between student and school. *Armijo,* 159 F.3d at 1261–62. But the court also said liability might be based on the school's affirmative act—sending the student home alone—if it increased the danger to the child and also met the "shocks-the-conscience" test. *Id.* at 1262. The court said that the latter test might be met if at trial the school officials were also shown to have known that the child in question had previously threatened suicide, was now distraught, was a special education pupil not fully able to care for himself, and had access at home to firearms. *Id.* at 1263–64.

Whether or not one agrees with the Tenth Circuit that such behavior would be conscience-shocking and not merely seriously negligent, the assumed facts are at least very troubling, especially as to any participating official who knew both of the suicide threat and the available gun. Even so, the facts in that case go a step beyond the typical endangerment cases cited by the Tenth Circuit, cases that involve manifestly outrageous behavior by the authorities certain to cause harm. *See Dwares,* 985 F.2d at 96 (police encourage skinheads to beat up flag-burning demonstrators); *Ross,* 910 F.2d at 1429–34 (deliberate state interference with private rescue attempt). If sound, the Tenth Circuit decision is at the outer limit, and does not come close to embracing Kempton's actions.

■ Three other alleged mistakes are all attributed to the school authorities in the complaint apart from their failure to prevent Jamie's suicide attempt. Two of the three—the failure to discover Jamie in timely fashion and the failure to act reasonably and appropriately when she was discovered—are bare conclusions and are not supported by any factual allegations in the complaint or elsewhere in the district court. *DM Research v. College of American Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999). The third claim, that the school told other parents that Jamie had attempted suicide, is not a due process violation. *Cf. Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■ In closing, we emphasize again that the due process clause is not a surrogate for local tort law or state statutory and administrative remedies. The federal courts have no general authority to decide when school administrators should introduce suicide prevention programs, or whether an unruly or upset school child should be sent out of class, or what should be said to other parents about a tragic incident at school. Substantive due process is not a license for judges to supersede the decisions of local officials and elected legislators on such matters. *Cf. Collins v. City of Harker Heights,* 503 U.S. 115, 128–29, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

In principle, Maine law does allow civil claims by citizens for serious misconduct by state or local officials, and the district court's dismissal in this case was without prejudice to the assertion of the Hasenfuses' state claims in state court. As is quite common, Maine provides broad immunity protection for its officials, Me.Rev.Stat. Ann. tit. 14, §§ 8104–D, 8111, grants governmental entities immunity from civil suit with certain exceptions possibly not applicable here, *id.* §§ 8103, 8104–A, and places a monetary cap on the amount of damages available against individual employees and the government itself, *id.* §§ 8104–D, 8105. Whether Maine should be more generous is a matter for its citizens to decide.

*Affirmed.*