Kristen CANTY, Jeffrey Canty, and Terri Canty, Plaintiffs,

v.

**OLD ROCHESTER REGIONAL SCHOOL DISTRICT, The School Committee of Old Rochester Regional School District, Joan Walsh, Robert Gardner, and John Shockro, Defendants.**

**No. Civ.A. 98–11531–WGY.**

United States District Court, D. Massachusetts.

June 21, 1999.

Craig A. MacDonnell, Keegan, Werlin & Pabian, LLP, Boston, MA, Denis R. Hurley, Thomas A. Conway, Featherstonhaugh, Conway, Wiley & Clyne, Albany, NY, for Kristen Canty, plaintiff.

Richard W. Renehan, Daniel C. Winston, Hill & Barlow, One International Place, Boston, MA, for Old Rochester Regional School District, defendant.

Gregory I. Massing, Attorney General's Office, Boston, MA, for Michael Sullivan, Michael Sullivan, District Attorney for Plymouth County, interested party.

**MEMORANDUM AND ORDER**

YOUNG, Chief Judge.

## I. Introduction

This action arises out of the sexual abuse of the plaintiff, Kristen Canty ("Canty"), when she was a student at Old Rochester Regional High School, by a coach named John Shockro ("Shockro"). Besides Shockro,[1] the defendants in the action include (i) Old Rochester Regional School District (the "School District"), (ii) the School Committee of Old Rochester Regional School District (the "School Committee"), (iii) the former superintendent of the School District, Joan Walsh ("Walsh"), and (iv) the former principal of the Old Rochester Regional Junior High School, Robert Gardner ("Gardner") (collectively, the "School Defendants"). By her amended complaint, Canty asserts claims for compensatory and punitive damages under Title IX, 20 U.S.C. § 1681, and 42 U.S.C. § 1983 against all of the School Defendants. Canty also seeks compensatory and punitive damages against the School District and the School Committee under the Massachusetts Tort Claims Act (the "Claims Act"). Canty's parents (the "Parents") derivatively seek compensatory and punitive damages under Title IX, section 1983, and the Claims Act.

The School Defendants seek judgment on the pleadings, see Fed.R.Civ.P. 12(c), as to portions of the complaint on the ground that they fail to state claims upon which relief may be granted. See Fed. R.Civ.P. 12(b)(6). In response, Canty and the Parents have withdrawn several claims.[2] Furthermore, at the conclusion of oral argument, this Court dismissed

---

1. Shockro, presently in prison, is in default and the claims brought against him are not at issue in the instant motion.

2. Canty has withdrawn her Title IX claims for compensatory and punitive damages against Walsh and Gardner, her Claims Act claims for punitive damages against the School District and School Committee, and her section 1983 claims for punitive damages against the

School District and School Committee. See Pl.Opp.Mem. at 19. The Parents have withdrawn their Title IX claims for compensatory and punitive damages against the School Defendants, their section 1983 claims for compensatory and punitive damages against the School Defendants, and their Claims Act claims for compensatory and punitive damages against Walsh and Gardner. See id.

several challenged claims from the bench.[3] As a result, the only claims which presently require consideration are (i) Canty's Title IX claims for punitive damages against the School District, (ii) Canty's Claims Act claims for compensatory damages against the School District, (iii) Canty's section 1983 claims for compensatory and punitive damages against Walsh and Gardner, (iv) Canty's section 1983 claim for compensatory damages against the School District, and (v) Canty's section 1983 claim for compensatory damages against the School Committee.

## II. Judgment on the Pleadings Standard

A motion brought under Fed.R.Civ.P. 12(c) "should be evaluated under the familiar standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Massachusetts Candy & Tobacco Distribs., Inc. v. Golden Distribs., Ltd.*, 852 F.Supp. 63, 67 (D.Mass.1994) (Karol, M.J.); *accord Doe v. Londonderry Sch. Dist.*, 970 F.Supp. 64, 70 (D.N.H.1997). A court's inquiry is a limited one, focusing not on whether the plaintiff will ultimately prevail but on whether the plaintiff should be entitled to offer evidence to support a claim. *See Londonderry Sch. Dist.*, 970 F.Supp. at 70. Consequently, taking all facts and inferences in favor of Canty and her Parents, this Court should grant the School Defendants' motion only "if it clearly appears according to the facts alleged, that the plaintiff[s] cannot recover on any viable theory." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992).

## III. Facts Derived from the Well–Pleaded Complaint

The following alleged facts, all derived from Canty's amended complaint, are material and deemed true for purposes of this motion:

Canty is the daughter of Jeffrey and Terri Canty. *See* Am.Comp. ¶ 2. In the mid–1990's, Canty was a student at Old Rochester Regional Junior High School and Old Rochester Regional High School, both of which are owned, operated, managed, and controlled by the School District and the School Committee and their agents and employees. *See id.* at ¶¶ 5, 19. The School District is an educational institution receiving federal funding. *See id.* at ¶¶ 16–17.

When Canty was in the seventh grade and thereafter for two years until approximately the end of 1997, Shockro had improper sexual contact with Canty both in and out of school. *See id.* at ¶ 19. In 1995, Shockro raped Canty. *See id.* at ¶ 20. Although Shockro's contact with Canty in 1995 was reported to several employees and officials of the School District, he remained in his employment with the school and continued to sexually harass, abuse, and assault Canty, both on and off school property, until late 1997. *See id.* at ¶ 21. In 1997, Shockro pled guilty to charges of rape and sexual assault of Canty. *See id.* at ¶ 22.

The School District and School Committee, through its agents, representatives, and employees, had knowledge of Shockro's sexual harassment and abuse of Canty as well as other female students, some incidents dating back to the 1970s. *See id.* at ¶¶ 24–26. Two agents of the School District, Gardner and Walsh, had knowledge of Shockro's history of sexual improprieties, both before and during his improper sexual contact with Canty. *See id.* at ¶ 49. Walsh and Gardner had specific knowledge in 1995 that Canty had been sexually harassed, sexually abused, and raped by Shockro. *See id.* at ¶ 55. Walsh

---

**3.** The Court dismissed Canty's Title IX claims for compensatory and punitive damages against the School Committee, Canty's Claims Act claims for compensatory damages against the School Committee, the Parents' Claims Act claims for compensatory and punitive damages against the School Committee, and the Parent's Claims Act claims for punitive damages against the School District.

and Gardner also knew that the harassment and abuse of Canty continued after 1995. *See id.* at ¶ 56.

## IV. Canty's Title IX Claims for Punitive Damages Against the School District

■ The School District maintains that, as a municipal entity,[4] it is not subject to claims for punitive damages under Title IX. Neither the Supreme Court nor the First Circuit Court of Appeals has decided whether punitive damages are available against a municipality under Title IX.

In 1979, the Supreme Court held that Title IX is enforceable through an implied right of action. *See Cannon v. University of Chicago,* 441 U.S. 677, 688–89, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Relying on the presumption that once a right of action has been recognized a federal court has the power to award "all appropriate remedies" absent "clear direction to the contrary by Congress," and determining that Congress had not indicated an intent to limit the private remedies under Title IX, the Supreme Court later held that the implied right of action under Title IX includes a remedy for monetary damages. *See Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 66–73, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). The *Franklin* Court did not, however, specify whether such remedy includes *punitive* damages, much less whether it includes punitive damages against a municipal entity. Since municipal entities typically enjoy immunity from punitive damages under federal law, *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), it is unclear whether the *Franklin* Court meant to include puni-

tive damages against municipal entities as part of "all available remedies." *Franklin,* 503 U.S. at 72, 112 S.Ct. 1028 (emphasis added).

Only a limited number of courts have addressed the availability of punitive damages against municipal entities in Title IX suits. In the First Circuit, the issue has been most extensively addressed in the District of New Hampshire. One district judge expressly has held that punitive damages are *not* recoverable against a school district under Title IX. *See Londonderry Sch. Dist.,* 970 F.Supp. at 76 (DiClerico, C.J.); *see also Edwards v. Chester Upland Sch. Dist.,* No. 96–7162, 1998 WL 464904, at *2 n. 1 (E.D.Pa. July 30, 1998); *Collier v. William Penn Sch. Dist.,* 956 F.Supp. 1209, 1217 (E.D.Pa.1997). The *Londonderry* court reasoned that *Fact Concerts* permits municipal liability for punitive damages only when there is express statutory authority, and Title IX contains no such authority. *See Londonderry Sch. Dist.,* 970 F.Supp. at 76. Only two months later, however, another district judge in New Hampshire treated the issue of municipal liability for Title IX punitive damages as unresolved and noted:

> [I]n the *rare case* in which a local public school district has demonstrated complete indifference to the requirements of Title IX and has committed *ongoing egregious violations* with no sign of relenting, a federal court might determine, in its discretion, that a punitive damages remedy for a private party is the best, or only, means of forcing the school district into compliance.

*See Doe v. Oyster River Coop. Sch. Dist.,* 992 F.Supp. 467, 483 n. 17 (D.N.H.1997) (Devine, J.) (emphasis added).[5] The *Oys-*

---

4. Public school districts are considered municipal entities. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 738, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (holding that school district could not be found liable for civil rights violations under theory of respondat superior).

5. The district court determined that, in enacting Title IX, Congress demonstrated no intention of disturbing the common law rule that municipalities are entitled to immunity from punitive damages. *See Oyster River,* 992 F.Supp. at 483. The court reasoned that, instead of punitive damages, Congress provided a "punitive-like sanction of terminating federal funding." *Id.* At the same time, how-

*ter River* court's less receptive approach to municipal immunity for punitive damages is bolstered by an earlier District of New Hampshire decision in which the court relied upon *Franklin* in its refusal to dismiss punitive damages claims against a school district under section 504 of the Rehabilitation Act, which it deemed "closely analogous" to Title IX. *See Penney v. Town of Middleton*, 888 F.Supp. 332, 342 (D.N.H. 1994) (Barbadoro, J.); *see also DeLeo v. City of Stamford*, 919 F.Supp. 70, 72–73 (D.Conn.1995) (holding punitive damages available under section 504 of the Rehabilitation Act); *cf. Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1194 (1st Cir.1994) (interpreting the *Franklin* presumption of a full remedy to allow for exemplary damages for violations of the implied right of action under the Occupational Safety and Health Act of 1970).

On balance, the sweeping language of *Franklin* to allow "all available remedies" and the demonstrated reluctance of courts in this Circuit to offer municipal immunity in similar circumstances prompts this Court to reject municipal immunity from punitive damages under Title IX. Although a motion for summary judgment may demonstrate otherwise, Canty's allegations against the School District rise to the level of the "ongoing egregious violations" discussed in *Oyster River*. *See* Am.Comp. ¶¶ 21, 25–28, 33–35, 40, 44. As Canty pleads the "rare case" in which punitive damages are warranted against a municipal entity, this Court DENIES the School District's motion to dismiss Canty's claims for punitive damages under Title IX.

## V. Canty's Claims Act Claims for Compensatory Damages Against the School District

The School District moves to dismiss Canty's Claims Act claim for compensatory damages against it. In Massachusetts, the

Claims Act provides the exclusive tort remedy against a public entity or employee acting within the scope of employment. *See* Mass.Gen.Laws ch. 258, § 2.

## A. Canty's Claims Act Claims Against the School District Premised on Misconduct of Employees Other Than Shockro

■ The School District first challenges Canty's Claims Act claims to the extent they are premised on the alleged misconduct of school employees *other than* Shockro. The School District bases this challenge on a recent interpretation of section 10(j) of the Claims Act by the Supreme Judicial Court in *Brum v. Town of Dartmouth*, 428 Mass. 684, 704 N.E.2d 1147, 1999 WL 25540 (1999). Under section 10(j), the Claims Act bars all claims against municipal entities:

> based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass.Gen.Laws ch. 258, § 10(j). In *Brum*, the mother of a son stabbed to death at the local high school, sued several municipal entities under the Claims Act for school officials' alleged failure to (i) adopt and implement a school security policy, and (ii) apprehend the perpetrators after learning of their intent to injure her son. *See Brum*, 428 Mass. at 687, 704 N.E.2d 1147. The Supreme Judicial Court held that section 10(j) bars claims for injuries arising out of a school's failure to maintain adequate security measures and protect students from known threats. *See id.* at 696, 704 N.E.2d 1147.

ever, the court noted that the Civil Rights Remedies Equalization Act (the "Rehabilitation Act"), 42 U.S.C. § 2000d–7, which abrogates the Eleventh Amendment immunity of states, arguably dispensed with municipal im-

munity to punitive damages. *See id.* at 484. The court chose not to decide this "nettlesome question" because it held that the evidence did not warrant punitive damages even if allowed under Title IX. *Id.*

Canty essentially attempts to hold the School District liable for its agents' negligent failure to "prevent or diminish" the sexual misconduct of Shockro. Am.Comp. ¶¶ 21, 25–28, 33–35, 40, 44–46. In a recent case in this District, Judge Keeton held that section 10(j) barred a claim for similar acts by a municipality. *See Armstrong v. Lamy,* 938 F.Supp. 1018, 1043–1044 (D.Mass.1996) (barring claims against municipality for its failure to [i] protect a student from a teacher's sexual misconduct, and [ii] train, supervise, regulate, control or correct the teacher). Since the principles relied upon in *Armstrong* were affirmed by the Supreme Judicial Court in *Brum,* this Court GRANTS the School District's motion to dismiss Canty's Claims Act claims to the extent they are premised on the acts of school employees other than Shockro.

**B. Canty's Claims Act Claims Against the School District Premised on Misconduct of Shockro**

■■■ The School District also moves to dismiss Canty's Claims Act claims premised on the misconduct of Shockro. To the extent that Canty attempts to hold the School District liable for Shockro's *intentional* torts, such claims are dismissed as matter of law under the Claims Act. *See* Mass.Gen.Laws ch. 258, § 10(c) (barring "any claims arising out of an intentional tort"); *Mohr v. Commonwealth,* 421 Mass. 147, 164, 653 N.E.2d 1104 (1995); *Spring v. Geriatric Auth. of Holyoke,* 394 Mass.

274, 284–85, 475 N.E.2d 727 (1985). To the extent that Canty attempts to hold the School District liable for Shockro's *negligent* misconduct, this Court likewise dismisses the claim because it is not alleged, nor could it reasonably be shown,[6] that Shockro's sexual misconduct was performed within the scope of his employment as is required for suit against a public employer under the Claims Act. *See* Mass. Gen.Law ch. 258, § 2. This Court thus GRANTS the School District's motion to dismiss Canty's Claims Act claims to the extent they are premised on Shockro's sexual misconduct.

**VI. Canty's Section 1983 claims**

**A. Deprivation of Constitutional Rights**

"Section 1983 provides a private right of action against state actors—that is, public officials acting under color of state law— who deprive individuals of rights confirmed by federal constitutional or statutory law." *Camilo–Robles v. Zapata,* 175 F.3d 41, 42 (1st Cir.1999). Relying primarily on the decisions of several other circuits, Canty argues that she has a "constitutionally recognized liberty interest under the Fourteenth Amendment, to safety in her personal and bodily integrity and freedom from sexual molestation by a teacher."[7] *See* Pl.Opp.Mem. at 10. While the First Circuit has not specifically addressed such a liberty interest in the school setting, two of its recent opinions

---

6. Sexual misconduct, especially sexual assault and rape, by an employee is not considered an act performed within the scope of his or her employment. *See Armstrong,* 938 F.Supp. at 1045 (holding that on-campus sexual contact with student not within scope of teacher's employment); *Doe v. Purity Supreme, Inc.,* 422 Mass. 563, 568, 664 N.E.2d 815 (1996) (rape and sexual assault were not within the scope of store manager's employment); *Worcester Ins. Co. v. Fells Acres Day Sch., Inc.,* 408 Mass. 393, 404, 558 N.E.2d 958 (1990) (concluding that day-care center employees' alleged sexual assault of children in their care was not within scope of employment).

7. Canty cites three cases to support this proposition: (i) *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720 (3d Cir.1989); (ii)*Doe v. Taylor Indep. Sch. Dist.,* 975 F.2d 137 (5th Cir.1992); and (iii) *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716 (6th Cir.1996). Although the *Doe* opinion cited was actually vacated, *see Doe v. Taylor Indep. Sch. Dist.,* 987 F.2d 231 (5th Cir.1993), upon rehearing the Fifth Circuit again held that "bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment," *see Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 451–452 (5th Cir.1994).

taken together establish a duty on schools to protect their students from a known danger when the failure to do so shocks the conscience.

First, in *Frances–Colon v. Ramirez,* 107 F.3d 62 (1st Cir.1997), parents sought to recover under section 1983 against two government physicians on the theory that the physicians' mishandling of their son's delivery amounted to a violation of his substantive due process rights. In rejecting the argument, the First Circuit noted that

> [a] substantive due process interest in "bodily integrity" ... cannot support a personal injury claim under section 1983 against the provider of a governmental service unless: (a) the government has taken the claimant into custody or *otherwise coerced the claimant into a situation where he cannot attend to his own well being,* ... or (b) the government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant or affirmatively prevents the individual from receiving assistance.

*Id.* at 63–64 (emphasis added) (citations omitted). More recently, and more germane to this case, the First Circuit held that a school violates the Due Process Clause when its failure to render aid to a student in peril is "truly outrageous, uncivilized, and intolerable." *See Hasenfus v. LaJeunesse,* 175 F.3d 68, 70 (1st Cir.1999) (holding that failure to protect student from on-campus suicide attempt was not a violation of substantive due process despite suicide epidemic at school and awareness of student's depression).

In light of *Hasenfus* and *Frances–Colon,* this Court would be remiss if it failed to hold liable those who, with actual knowledge of the pertinent facts, required a student to attend school under the supervision of a teacher who formerly had sexually assaulted her or other students. Surely such conduct is "truly outrageous, uncivilized, and intolerable." *Id.* Indeed, what could be more outrageous? Under such

circumstances, it is impossible for a student to attend to her own well-being at school. *See Frances–Colon,* 107 F.3d at 63–64. Unlike safeguarding students from suicidal tendencies—which the *Hasenfus* court held is the primary responsibility of parents—there is no amount of loving support, therapy, or medication that parents can provide to their children that will prepare them to fend off a sexual predator masquerading as a public school teacher.

Of course, it must be clear from the complaint (and supported by subsequent proof) that a school (or its officials) failed to act after acquiring *actual knowledge* of a substantial danger to students. A school (or its officials) cannot be held accountable for an employee who, with no warning or prior history, suddenly attacks or sexually assaults a student. It is only the actual knowledge of credible reports of serious intentional harm to a student or students by a teacher that makes a school's subsequent failure to act shocking.

In at least nine places, the Amended Complaint describes the School Defendants' knowledge of Shockro's prior sexual misconduct:

> During September 1995, John Shockro forced sexual contact upon Kristen Canty and raped her. Although Shockro's contact with Kristen Canty in September 1995, was reported to several employees and officials of Old Rochester Regional School District, John Shockro remained in his employment with the school and continued to sexually harass, sexually abuse and sexually assault Kristen Canty, both on and off the school premises, until late 1997. Am. Compl. ¶¶ 20, 21.

> Upon information and belief, defendants, Old Rochester Regional School District and/or the School Committee of Old Rochester Regional School District, through its agents, representatives and employees, had knowledge of John Shockro's sexual improprieties with female students before his sexual and oth-

er improprieties with Kristen Canty. *Id.* at ¶ 25.

Upon information and belief, defendants, Old Rochester Regional School District and/or the School Committee of Old Rochester Regional School District; through its agents, representatives and employees, had, before and during Shockro's sexual improprieties with Kristen Canty, knowledge of Shockro's improprieties, sexual and otherwise, with other female students. *Id.* at ¶ 26.

Upon information and belief, defendants, Old Rochester Regional School District and/or the School Committee of Old Rochester Regional School District, through its agents, employees, and/or representatives, obtained specific knowledge in September 1995 that Kristen Canty had been raped and/or sexually abused and/or was otherwise subject to improper contact by John Shockro. *Id.* at ¶ 33.

After September 1995, John Shockro continued to sexually abuse, sexually harass Kristen Canty and otherwise subject her to improper sexual contact and this occurred with the knowledge of defendants through their agents, representatives and employees. *Id.* at ¶ 34.

Defendants, through their agents, employees and representatives knew, or should have known, of John Shockro's sexual improprieties with female students, including Kristen Canty. *Id.* at ¶ 44.

Upon information and belief, at all times herein relevant, Robert Gardner and Joan Walsh were both representatives, agents, and employees of [Old Rochester Regional School District] who knew, both before and during John Shockro's sexual contact with Kristen Canty, that John Shockro had a history of repeated sexual improprieties with female students. *Id.* at ¶ 49.

Upon information and belief, defendants had specific knowledge during October 1995 that Kristen Canty had been sexually harassed, and/or sexually abused, and/or raped by John Shockro, or otherwise subjected to improper contact by John Shockro. *Id.* at ¶ 55.

John Shockro's sexual harassment and sexual abuse of Kristen Canty continued after September 1995, upon information and belief, with the knowledge of defendants. *Id.* at ¶ 56.

Of course, Canty's allegations could more clearly describe the School Defendants' actual knowledge of Shockro's sexual misconduct. They are, however, sufficient under the liberal notice pleading standards of the Federal Rules of Civil Procedure. This is especially true in light of Fed.R.Civ.P. 9(b), which states that knowledge "may be averred generally." While the School Defendants are sure to challenge Canty's ability to prove actual knowledge on a motion for summary judgment, at this stage the Court must accept her allegations as true.

**B. Pre-emption Generally**

■ The Court now confronts the most difficult, puzzling, and troubling legal aspect of this case. Notwithstanding the ruling just made, the School Defendants claim that Congress, in enacting Title IX, did away with a citizen's right to bring suit under the nation's fundamental civil rights law. The School Defendants can, however, point to nothing in the Title IX statute itself or in its legislative history—nothing, not one word—evidencing a Congressional intent to eviscerate one major civil rights statute by the passage of another. Even so, incredible as it may seem, the very breadth of the remedy this Court is willing to find in Title IX indicates that the School Defendants may well be right. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

In *Sea Clammers,* the Supreme Court held for the first time that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional

intent to preclude the remedy of suits under § 1983." *Id.* (ruling section 1983 action precluded under Maritime Protection, Research and Sanctuaries Act and Federal Water Pollution Control Act, both of which permit private rights of action against "any person"). This is potent doctrine indeed, recognized as such, and soundly condemned. *See* Robert L. Glicksman, *Federal Preemption and Private Legal Remedies for Pollution,* 134 U.Penn. L.Rev. 121, 223 n. 135 (1985) (describing the Supreme Court's analysis in *Sea Clammers* as "not fully persuasive"); Eric H. Zagrans, *"Under Color of" What Law: A Reconstructed Model of Section 1983 Liability,* 71 Va.L.Rev. 499, 598 n. 67 (1985) ("*Sea Clammers* represents yet another effort by the Court to restrict the scope of § 1983 liability in order to limit the number of actions which can be brought in federal court."); Richard B. Stewart & Cass R. Sunstein, *Public Programs and Private Rights,* 95 Harv.L.Rev. 1193, 1322 n. 463 (1982) (criticizing the *Sea Clammers* decision for barring damages actions that might promote efficiency under a statutory tort approach); Cass R. Sunstein, *Section 1983 and the Private Enforcement of Federal Law,* 49 U.Chi.L.Rev. 394, 395–96 (1982) ("Carried to its logical limit, *Sea Clammers* would lead to a rule that the creation of an explicit enforcement mechanism invariably extinguishes the private right of action under section 1983."); Myron Rumeld, Note, *Preclusion of Section 1983 Causes of Action by Comprehensive, Statutory Remedial Schemes,* 82 Colum.L.Rev. 1183, 1183 (1982) (criticizing the *Sea Clammers* decision as too restrictive); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 8.8, at 487 (2d ed.1994) (noting that *Sea Clammers* has spawned great disunity among lower court decisions).

Conscience compels consideration, albeit brief, of the larger issues presented by the *Sea Clammers* preclusion doctrine. In a federal system of government such as ours, the Supremacy Clause of the constitution, *see* U.S. Const. art. VI, necessarily has required development of a doctrine of preemption of state laws wherever necessary to permit the proper functioning of federal enactments. Today the proper sweep of federal preemption is one of the most important and oft-litigated issues across the entire spectrum of litigation. *See, e.g., El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* —— U.S. ——, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (airline tort litigation); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (medical devices product liability litigation); *Cipollone v. Liggett Group,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (tobacco litigation); *Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988) (automobile products liability litigation). Another example is the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, which provided for partial preemption of securities fraud cases. *See Lirette v. Shiva Corp.,* 27 F.Supp.2d 268, 271 n. 2 (D.Mass.1998). When this appeared insufficient to cut down on such litigation, *see* Steve Bailey & Steven Syre, *'95 Reform Fails to Limit Class–Action Lawsuits by Shareholders,* Boston Globe, April 22, 1998, at F1, Congress passed the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353 (providing for complete preemption). Indeed, take the case of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq., about which commentators now agree with virtual unanimity that the Supreme Court swept the preemption broom too broadly, thus abolishing in one stroke much of the health care regulatory mechanisms of the fifty states in the absence of any actual Congressional intent to effectuate such a result. *See Andrews–Clarke v. Travelers Ins. Co.,* 984 F.Supp. 49 (D.Mass.1997). However injurious the individual consequences, the legal doctrine is clear: federal preemption will trump state legislation whenever the two are fairly in conflict.

As between inconsistent federal enactments, however, the pre-*Sea Clammers* le-

gal doctrine was equally clear, albeit often difficult to apply. As both laws had been passed by Congress, a co-equal branch of government, the duty of the Court was to harmonize the two. *See McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 168 (1st Cir.1987). Nor is harmonization of the two statutes at issue here particularly difficult, as a quick comparison of their salient features (as interpreted by this Court) will indicate.

|  | § 1983 | Title IX |
|---|---|---|
| private right of action | yes, express | yes, implied |
| individual liability | yes | no, District alone liable |
| supervisory liability | yes | yes |
| compensatory damages | yes | yes |
| punitive individual damages | yes | no |
| punitive municipal damages | no | yes |
| attorneys fees | yes | yes ? |

In circumstances such as these—and they occur with monotonous regularity when district courts charge juries to apply federal statutes or federal and state statutes covering much the same terrain[8]—courts routinely avoid double compensation but permit recovery of whatever compensation either statute affords.

Until *Sea Clammers*. Although that decision invokes the obligatory obeisance to "congressional intent," *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615, thereafter the very detail of an enactment by a later Congress places earlier statutes at risk of "preclusion," should a court deem such a result warranted. For over nearly two hundred years, no court could impede enforcement of a duly-enacted federal statute short of taking the considered step of declaring that statute unconstitutional. *Sea Clammers* sets loose the doctrine of preemption as among the entire body of federal laws. Today, enforcement of older federal statutes may simply be precluded by newer, more detailed—frequently more limited—statutes, all without reference to legislative history.[9]

Still, when the "trumpets sound clearly, courts are duty bound to honor the clarion call." *United States v. Jackson*, 30 F.3d 199, 204 (1st Cir.1994). The doctrine of *stare decisis* brooks no exceptions, so it is the clear duty of this Court to analyze how, if at all, the *Sea Clammers* doctrine applies when section 1983 is tested against Title IX.

The School Defendants argue that, under the *Sea Clammers* doctrine, the "remedial devices" provided in Title IX are "sufficiently comprehensive" to preclude a section 1983 action arising out of the same factual circumstances. This argument is supported by the opinions of three United States Courts of Appeals that have discerned a Congressional intent to preclude suit under section 1983. In so holding, these courts include the *Franklin* implied private right of action for monetary damages among Title IX's "remedial devices." *See Bruneau v. South Kortright Central Sch. Dist.*, 163 F.3d 749, 757 (2d. Cir. 1998); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862–63 (7th Cir.1996); *Williams v. School Dist. Of Bethlehem*, 998 F.2d 168, 176 (3rd Cir.1993). On the other hand, by

8. Common examples abound. Consider admiralty and negligence counts in a typical maritime case or federal and state anti-discrimination statutes in an employment discrimination case.

9. It must be remembered that the decision to "preclude" enforcement of an earlier statute is made upon a review of the comprehensiveness of the later statutory scheme on its face. No review of legislative history is required or, apparently, encouraged. Small wonder some commentators today speak of an "imperial judiciary." *See, e.g.,* Akhil Reed Amar, *The Unimperial Presidency,* The New Republic, Mar. 8, 1999, at 25.

not including the implied right of action for monetary damages within Title IX's remedial scheme, three other circuits have held that there is no preclusion. *See Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997); *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir.1996); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir.1996).

*Sea Clammers* instructs courts to search out a "congressional intent" to supplant section 1983 actions. *See Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615. This Court concludes that the *Franklin* implied private right of action necessarily *should* be considered among Title IX's remedial devices for the purposes of the *Sea Clammers* analysis. In fact, this Court has even gone so far as to extend the implied private right of action under Title IX to permit suit for punitive damages against a municipal entity under certain egregious circumstances. · *See* section IV, *supra.*

For this Court to ignore the reach of the Title IX private right of action when conducting the *Sea Clammers* analysis would undermine the Supreme Court's discovery in *Franklin* of a "congressional intent" to create a private right of action under Title IX in the first place. This the Court cannot do.

### C. Preemption Applied: Inability to Sue Individuals Under Title IX

As stated immediately above, this Court follows the lead of those courts that have determined Title IX precludes section 1983 actions—to the extent that those courts have included Title IX's implied right of action in the *Sea Clammers* analysis. Nonetheless, this Court would conclude, were it open to it to do so, that, even considering the implied right of action, Title IX does not present a "sufficiently com-

prehensive" remedial scheme to justify preclusion under *Sea Clammers* because Title IX does not allow recovery from individuals. *See* 20 U.S.C. § 1681; *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988).

In general, it can be said that both the Supreme Court and the First Circuit have found a federal statute implicitly to preclude suit under section 1983 only when the statute in question provides a private right of action against individuals in addition to substantial administrative remedies.[10] *See Sea Clammers*, 453 U.S. at 21, 101 S.Ct. 2615; *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5–6 (1st Cir.1992) (ruling section 1983 action precluded under Safe Drinking Water Act, which permits private right of action against individuals); *Garcia v. Cecos Int'l, Inc.*, 761 F.2d 76, 82–83 (1st Cir.1985) (ruling section 1983 action precluded under Resource Conservation and Recovery Act, which expressly allows plaintiffs to recover civil penalties against "any person").

However promising this line of analysis, it founders upon the iceberg of *Smith v. Robinson*, 468 U.S. 992, 1011–1013, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Smith*, the Supreme Court determined that the Education of the Handicapped Act, 20 U.S.C. §§ 1400 et seq., precluded suit under section 1983 even though it *did not* include any express or implied private right of action whatsoever. *See Smith*, 468 U.S. at 1013, 104 S.Ct. 3457. Without mentioning *Sea Clammers*, the Supreme Court concluded that the "detailed procedural protections outlined in the statute," *see id.* at 1011, 104 S.Ct. 3457, were "the exclusive avenue through which the [plaintiffs] can pursue their claim," *id.* at 1013. *Smith* thus apparently requires only an effective administrative or procedural remedy to justify implicit preclusion of suit

---

**10.** Title IX provides substantial administrative remedies: (i) administrative investigation and informal resolution by the Department of Education, *see* 34 C.F.R. § 100.7(a)–(d), (ii) administrative investigation and termination of federal funding, *see* 34 C.F.R. § 100.8(a), (iii) administrative investigation and resolution by

any means authorized by law (such as a reference to the Department of Justice with a recommendation that appropriate enforcement proceedings be brought), *see id.*, and (iv) any applicable proceeding under State or local law, *see id.*

under section 1983—the statute need not provide an express or implied private right of action against anyone.[11] This Court cannot fairly rule that Title IX does not provide a remedy equivalent to that available in *Smith,* especially in light of the implied private right of action and the allowance of punitive damages against municipalities (not to mention the available administrative remedies).

As this Court is duty-bound to follow the teachings of *Smith,* it must hold that Title IX prohibits Canty from bringing suit under section 1983, and grant the motion to dismiss Canty's section 1983 claims.[12] *See Nelson v. University of Maine Sys.,* 914 F.Supp. 643, 648 (D.Me.1996) (ruling that Title IX precludes suit under section 1983). The motion to dismiss Canty's section 1983 claims for compensatory and punitive damages against Walsh and Gardner, Canty's section 1983 claim for compensatory damages against the School District, and Canty's section 1983 claim for compensatory damages against the School Committee is therefore GRANTED.

### D. Certification Under Section 1292(b)

The granting of a motion to dismiss part of an action that remains pending is not immediately appealable. *See Herdrich v. Pegram,* 154 F.3d 362, 368 (7th Cir.1998). Under 28 U.S.C. 1292(b), however, a District Court may certify such an order for interlocutory appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."

The stark division among the six circuits to consider Title IX preclusion of section 1983 actions certainly demonstrates a sufficient difference of opinion. Moreover, while not explicitly analyzing Title IX under the *Sea Clammers* doctrine, the First Circuit has indicated that section 1983 actions against supervisory officials at educational institutions may not be precluded by Title IX. *See Lipsett,* 864 F.2d at 901 (stating that the separate liability of supervisory officials "must be established, if at all under section 1983, rather than under Title IX"). Since the decision to preclude Canty's section 1983 actions is also "a controlling question of law," and reversal on appeal would "materially advanc[e] the ultimate termination of the litigation" by affecting the scope of the trial and the individuals subject to suit, this portion of the Court's decision warrants certification under section 1292(b). The action is not otherwise stayed.

---

**11.** The low threshold required by *Smith* to find preclusion is suspect after two more recent Supreme Court cases. Most recently, in *Blessing v. Freestone,* 520 U.S. 329, 348, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court refused to hold that Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–669b, precluded suit under section 1983. In so doing, the Court relied on the fact that Title IV–D contains no private remedy. *See id.* Similarly, in *Wright v. City of Roanoke Redev. and Hous. Auth.,* 479 U.S. 418, 427–429, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Supreme Court held that the Housing Act, 42 U.S.C. §§ 1401 et seq., did not preclude suit under section 1983 because no "private judicial remedies" were available. While these cases arguably set the bar somewhat higher for a court to find a federal statute preclusive of separate suit under section 1983, neither case suggests, as this Court would prefer to rule, that preclusion can only occur if there is a private right of action available against individuals.

**12.** In the wake of *Smith,* Congress added section 1415(f) to the Education of the Handicapped Act which states that the provisions of the statute are not the exclusive avenue for redress available to handicapped children, and that claims under section 504 of the Rehabilitation Act of 1973 and other constitutional or statutory provisions are permitted after exhaustion of administrative remedies. *See* 20 U.S.C. § 1415(f). In the event that the First Circuit agrees that *Smith* constrains Canty's rights to proceed under section 1983 against the School Defendants, a similar amendment to Title IX would provide valuable guidance to the federal courts.