Jane DOE, John Doe and Mary Doe, Plaintiffs,

v.

OLD ROCHESTER REGIONAL SCHOOL DISTRICT, Robert Gardner, Joan Walsh, and John A. Shockro, Defendants.

No. 99–10214 MEL.

United States District Court, D. Massachusetts.

July 6, 1999.

---

Fredric L. Ellis, Edward A. Broderick, Edward A. Rapacki, Ellis & Rapacki, Boston, MA, for Jane Doe, John Doe, Mary Doe, Plaintiffs.

Richard W. Renehan, Hill & Barlow, Boston, MA, for Old Rochester Regional School District, Robert Gardner, Joan Walsh, John A. Shockro, Defendants.

Catherine E. Sullivan, Assist. Atty. Gen, Boston, MA, for Michael Sullivan, interested party.

LASKER, District Judge.

Two questions arise from this case. First, do remedies for sexual harassment under Title IX, 20 U.S.C. § 1681 *et seq.* (1994) ("Title IX") foreclose remedies under 42 U.S.C. § 1983 (1994) (" § 1983")? Second, to what extent does an employer need to "originally cause" conduct to be liable for tortious claims under the Massachusetts Torts Claims Act, Mass. Gen. Law c. 258 (1996) ("MTCA")?

The facts alleged in the complaint are deemed true for the purposes of the motion to dismiss.

Jane Doe was a student at the School District, and is the daughter of John and Mary Doe. The School District is a municipal educational institution receiving federal financial assistance under a Title IX program. It operates Old Rochester Regional Junior High School ("ORR Jr. H.S.") and Old Rochester Regional High School ("ORR H.S."). The School District employed: Walsh as Superintendent, Gardner as Principal at ORR Jr. H.S., and Shockro as a teacher at ORR Jr. H.S. and a coach at ORR H.S. Walsh and Gardner have retired. Shockro is incarcerated for felony offenses—including rape and indecent assault and battery on Jane Doe.

Beginning in June 1994, when she was in the eighth grade, through August 1996, Shockro committed acts of indecent physical and sexual assault—including forcible sexual intercourse—upon Jane Doe on School District property and elsewhere. School District officials, including Walsh and Gardner, had actual knowledge of Shockro's improper conduct toward Jane Doe and other female students, but were deliberately indifferent to such conduct. They failed to institute corrective measures, such as reporting the conduct to the Massachusetts Department of Social Services ("DSS"), or protecting Doe and other female students from Shockro. Moreover, School District officials, including Walsh and Gardner, had actual knowledge of Shockro's sexual assault of another female student in October 1995. In that instance, they also failed to report the conduct to DSS.

As a result of this history, Jane Doe was the victim of insults, taunts, and physical harassment by other students at ORR H.S. School District officials, including Walsh and Gardner, had actual knowledge of such harassment, but were deliberately indifferent to and failed to take action to prevent the harassment. The School District had a custom or policy of failing to train administrators, teachers, and staff to recognize, report, investigate, or mitigate sexual harassment by teachers against students. It also had a custom and policy of failing to supervise Shockro to prevent or stop his known and persistent sexual abuse of students.

The Complaint asserts seven counts: that the School District violated Doe's rights under Title IX (Count I); that the School District violated her constitutional right to bodily integrity in violation of § 1983 (Count II); that Walsh and Gardner violated her rights under § 1983 (Count V); that Shockro violated her rights under § 1983 (Count VI); and that Shockro violated her rights under 42 U.S.C. § 13981 (Violence Against Women Act) (Count VII); and two state law claims: that the School District was negligent in employing Shockro and giving him access to female students (Count III); and that the School District caused Negligent Infliction of Emotional Distress (Count IV).

The defendants move to dismiss the § 1983 claims against the School District and Walsh and Gardner on the grounds that Title IX constitutes the exclusive remedy for relief against them. Relying mainly on *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615,

69 L.Ed.2d 435 (1981), they argue that Title IX's remedies are "sufficiently comprehensive" to "demonstrate congressional intent to preclude the remedy of suits under § 1983." The Does respond that Title IX's remedial scheme is not "elaborate" enough to foreclose § 1983's remedies.

The defendants also move to dismiss both state law claims on the grounds that the School District did not "originally cause[ ]" Shockro's tortious behavior, as required for recovery under the MTCA. The Does respond that their case is distinguishable on the facts from those in which plaintiffs were barred from recovery. *See, e.g., Armstrong v. Lamy*, 938 F.Supp. 1018, 1029–30 (D.Mass.1996); *Brum v. Town of Dartmouth*, 428 Mass. 684, 696, 704 N.E.2d 1147 (1999).

The motion to dismiss is denied as to the claims arising under § 1983, but granted as to the state law claims.

### § 1983 and Title IX claims

Jane Doe argues that she has a substantive due process right to bodily integrity that is different from the Title IX right to an education environment free of sexual discrimination and that, accordingly, Title IX does not foreclose her right to enforce available § 1983 remedies.

Under § 1983, both individual defendants and School Districts may be held liable for violation of a person's constitutional rights under color of state law.[1] *See* 42 U.S.C. § 1983. However, under Title IX, only "education[al] program[s]" or "activit[ies] receiving Federal financial assistance" are liable for discriminatory behavior.[2] *See* 20 U.S.C. § 1681(a). The issue here is whether the Does' Title IX claim against the School District forecloses lia-

1. 42 U.S.C. § 1983 states, in relevant part: Every person who, under color of any statute ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

2. 20 U.S.C. § 1681(a) states, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...."

bility under § 1983 against the School District and Gardner and Walsh.

Section 1983 authorizes an individual to recover for a violation of one of an entire spectrum of constitutional rights. Title IX is a statute of limited scope which, in 20 U.S.C. § 1682, authorizes:

> [e]ach Federal department and agency ... empowered to extend Federal financial assistance to any education program or activity ... to effectuate the provisions of section 1681 .... Compliance ... may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity ... or (2) by any other means authorized by law ....

The Supreme Court has recognized an individual's private right of action under Title IX. *Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (Congress intended Title IX to include private cause of action); *see also Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("damages remedy is available for an action brought to enforce Title IX"). The question presented here is whether Title IX's remedial plan is "sufficiently comprehensive" under the *Sea Clammers* rubric "to demonstrate congressional intent to preclude the remedy of suits under § 1983," 453 U.S. at 20, 101 S.Ct. 2615.

Relying on *Sea Clammers* and citing the remedies available in Title IX—including administrative remedies and the judicially recognized private right of action—defendants argue that Congress intended Title IX's enforcement scheme to foreclose recovery against the School District and supervisory officials under § 1983, supplanting potentially "collateral and inconsistent" § 1983 remedies. Defendants contend that the Congress intended to limit or tailor the remedies for complaints to Title IX, similar to the scheme in the Education of the Handicapped Act (20 U.S.C. § 1400 *et seq.*), which the Supreme Court found, in *Smith v. Robinson,* 468 U.S. 992, 1009–13

& n. 16, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), to foreclose recovery under § 1983. Because Title IX provides a cause of action against educational institutions and not supervisory officials, defendants rely on *Waid v. Merrill Area Pub. Sch.,* 91 F.3d 857, 862 (7th Cir.1996), to argue that "Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officers associated with those institutions." Finally, defendants argue that the Supreme Court and the First Circuit have expressly held that a comprehensive statutory scheme forecloses constitutional claims under § 1983 as well as statutory claims when they are based on substantially the same facts, as here.

The Does' respond that Title IX's statutory framework is not so comprehensive to preclude recovery under § 1983. Relying on *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (quoting *Smith,* 468 U.S. at 1012, 104 S.Ct. 3457), they contend that the Supreme Court has held that § 1983 remedies may be foreclosed by other statutes only in two situations: (1) when Congress has expressly withdrawn it as a remedy from a statutory scheme; or (2) when Congress has enacted a "carefully tailored scheme" that would make a § 1983 claim inconsistent within the framework of the statute. They argue that "[t]he difference between an expressly comprehensive remedial scheme and a judicially implied private right of action is one of kind, and not just of degree," and that the absence of express remedial measures forecloses the argument that recovery under § 1983 is barred as being inconsistent with Congress' carefully tailored scheme.

The Courts of Appeals which have addressed the issue have split evenly on whether Title IX precludes § 1983 remedies. *See Crawford v. Davis,* 109 F.3d 1281, 1284 (8th Cir.1997) ("[T]here is no evidence that Congress intended to foreclose the use of § 1983 to redress viola-

tions of Title IX."); *Seamons v. Snow*, 84 F.3d 1226, 1233–34 (10th Cir.1996) (citing *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 723 (6th Cir.1996)) ("Title IX contains no comprehensive enforcement scheme" and there is no evidence of Congressional intent to make it the exclusive remedy). *But see Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756 (2d Cir.1998) ("[A]vailability of a private judicial remedy is ... evidence of a congressional intent to supplant a § 1983 remedy.") (citing *Wright v. City of Roanoke Redev. and Hous. Auth.*, 479 U.S. 418, 427, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)), *cert. denied,* —— U.S. ——, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999); *Waid,* 91 F.3d at 862 (Title IX claim precludes § 1983 claim); *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir.1990) (Title IX "subsumed" constitutional § 1983 claims).

All of the Circuits addressing the issue have recognized that monetary damages are available under Title IX's implied right of action.[3] The key difference among the decisions is that some consider the implied right of action to be evidence of a comprehensive scheme, while others do not. The Circuits which have found preemption have held that an implied right of action is evidence of Congressional intent to make Title IX the exclusive remedy for constitutional claims. *See Pfeiffer,* 917 F.2d at 789 (Third Circuit followed district court's ruling that Title IX "subsumed" constitutional claims because of *Sea Clammers* doctrine); *see also Bruneau,* 163 F.3d at 756–57 (Second Circuit held that *Sea Clammers* doctrine applied to Title IX because of statute's "complex administrative enforcement scheme," and that doctrine contained no exception for constitutional claims); *Waid,* 91 F.3d at 862–63 (Seventh Circuit followed Third Circuit's holding in *Pfeiffer,* reasoning that "Title IX gives plaintiffs access to the full panoply of judicial remedies ... Through the establishment of this

statutory regime, Congress effectively constitutional principles of equal protection.").

On the other hand, the Circuits holding that Title IX's statutory scheme does not supplant § 1983 for constitutional and statutory claims have cited the statute's sparse express remedies as evidence that Congress did not intend it to be a comprehensive scheme. In *Lillard v. Shelby County Bd. of Educ.*, the Sixth Circuit held that the *Sea Clammers* doctrine did not apply to Title IX for two reasons. 76 F.3d at 722–24. First, the facts underlying the constitutional claims were different than the statutory claims. *Id.* at 722–23. Of more importance here, it also held that *Sea Clammers* did not apply because there was "no evidence in Title IX that 'Congress intended to foreclose [a section 1983] action by providing an exclusive remedy within' Title IX" *Id.* (citing *Carelli v. Howser,* 923 F.2d 1208, 1210 (6th Cir.1991)) (brackets in original); *see also Crawford,* 109 F.3d at 1284 (Eighth Circuit held *Sea Clammers* does not restrict § 1983 for independent constitutional claims, even when based on same set of facts; express procedure to terminate federal institutional support and implied right of action "a far cry" from a comprehensive scheme); *Seamons,* 84 F.3d at 1234 (Tenth Circuit followed Sixth Circuit's holding in *Lillard* ).

I find the decisions which allow recovery under both statutes to be more persuasive. Although the Supreme Court has ruled that Congress intended Title IX to include a private cause of action (*Cannon,* 441 U.S. at 694; 99 S.Ct. 1946) and that the statute included a damages remedy (*Franklin,* 503 U.S. at 76, 112 S.Ct. 1028), it does not necessarily follow that the Title IX scheme of recovery is so "comprehensive" as that term is used by the Supreme Court in *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. 2615, to preclude recovery under § 1983. Unfortunately, neither subsequent Supreme

---

3. The Third Circuit in *Pfeiffer v. Marion Ctr. Area Sch. Dist.* held that monetary damages were available under Title IX's private right of

action, even though such damages had not yet been expressly recognized by the Supreme Court in *Franklin. See* 917 F.2d at 788.

Court decisions, nor one in the First Circuit, give a clear lead.

Only twice has the Supreme Court held that a remedial scheme was "sufficiently comprehensive" to foreclose a § 1983 claim. *Blessing v. Freestone,* 520 U.S. 329, 347, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (quoting *Golden State Transit Corp.,* 493 U.S. at 107, 110 S.Ct. 444). In both cases, the statutes in question established "elaborate" structures to deal with the "foreclosed" subject. The first was *Sea Clammers* itself, which dealt with two environmental statutes: the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (1976 ed. and Supp. III), and the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401 *et seq.,* (1976 ed. and Supp. III). 453 U.S. at 4, 101 S.Ct. 2615. In holding that these laws precluded § 1983 remedies, the Court cited both statutes' "unusually elaborate enforcement provisions," highlighting the statutory language giving government officials and private citizens the right to sue. *Id.* at 13–14, 101 S.Ct. 2615. The second was *Smith v. Robinson,* in which the Court cited the EHA's express establishment of an "elaborate procedural mechanism" to protect handicapped children. 468 U.S. at 1010–11, 104 S.Ct. 3457. There, the Court relied on the legislative history—absent here—to determine that Congress intended the statute to be the exclusive remedy. *Id.* at 1009, 104 S.Ct. 3457.

Both parties rely on the recent decision of *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). In *Gebser,* the Supreme Court held that it would "frustrate the purposes" of Title IX for a school district to be liable for a teacher's sexual harassment of a student under Title IX without actual notice of the conduct. *Id.* at 1997. Defendants argue first, that the Court held that Title IX's implied private right of action

should be treated as if it were an express statutory provision, and second, that the right of action is evidence that Congress intended Title IX to be a comprehensive scheme foreclosing recovery under § 1983. *See id.* That proposition is not supported by *Gebser.* Indeed, the Court recognized that it "made no effort in *Franklin* to delimit the circumstances in which a damages remedy [under Title IX] should lie." *Id.* at 1996 (brackets added). The Court further stated that because the private right of action in Title IX is judicially implied, "there is thus no legislative expression of the scope of available remedies." *Id.* These statements are inconsistent with a conclusion that the statute constitutes a comprehensive scheme.

A point not raised by the parties but worth mentioning is the similarity between Title IX and Title VI of the Civil Rights Act of 1964. As the Supreme Court found in *Cannon,* the only difference between the two statutes is the "substitution of the word 'sex' in Title IX to replace the words 'race, color, or national origin' in Title VI."[4] 441 U.S. at 694–695, 99 S.Ct. 1946. Because of the similarity in structure between the two statutes, a strong argument can be made that since § 1983 remedies may be "an alternative and express cause of action" under Title VI, (*Cannon,* 441 U.S. at 697 n. 21, 99 S.Ct. 1946), they are also permissible under Title IX.

Although the First Circuit has not directly addressed the issue whether Title IX preempts a § 1983 claim, it has recognized in *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st. Cir.1988), that "[i]n implying a cause of action under Title IX, the Supreme Court has considered only actions against the educational institution itself. Accordingly, the separate liability of the supervisory officials at the University must be established ... under § 1983, rather than under Title IX."

4. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1994) states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

The quoted passage certainly seems to support that recovery is available under both statutes, although the defendants are correct in pointing out that neither party in *Lipsett* raised the preemption issue.

Weighing the decisions of the Supreme Court and the Courts of Appeal, I conclude that the "scheme" of Title IX is not so comprehensive as to foreclose simultaneous claims under § 1983 and that the relevant factors do not establish that Congress intended Title IX to be the exclusive remedy for a plaintiff in the position of Jane Doe.

I recognize that an esteemed colleague in this district has recently ruled that recovery under Title IX precludes that under § 1983 in the companion case to this one, *Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F.Supp.2d 66 (D.Mass.1999), an impressive opinion, which illustrates the complexity surrounding the issue of preclusion between the statutes. I do not come to the conclusion lightly to disagree with the end result finding preclusion. However, I do not believe that § 1983 may be foreclosed without a stronger signal from Congress or the Supreme Court.

*Certification*

The *Canty* decision has been certified to the Court of Appeals for pretrial decision under 28 U.S.C. 1292(b). A conference will be held with counsel to determine whether this decision should be certified for pretrial determination.

*State law claims*

The Does also assert two state law claims: a negligence claim, alleging that the School District breached its duty to prevent or mitigate Shockro's sexual abuse of Jane Doe by employing him and failing to investigate or report allegations that he had sexually assaulted girls; and a claim

for negligent infliction of emotional distress, alleging that the School District breached its duty to prevent or mitigate the harassment of Jane Doe by other students between the dates of Shockro's arraignment and conviction.

The Massachusetts Torts Claims Act ("MTCA") provides the exclusive state law remedy against a public entity for claims of tortious action or inaction of public employees.[5] The School District is a "public employer" under the MTCA, and accordingly the Does' claims against the School District are valid only to the extent permitted by the statute. *See* M.G.L. c. 258 § 1. Because both claims exceed the MTCA's scope under § 10(j) and § 2, they must be dismissed.

■ Defendants argue that a claim based on the failure of the School District to prevent or mitigate Shockro's behavior is barred by § 10(j), which provides that "an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, *which is not originally caused* by the public employer or any other person acting on behalf of the public employer," is barred. (emphasis added). They contend that because the complaint does not allege that the School District or Walsh or Gardner were negligent in hiring Shockro, they did not originally cause the situation and cannot be held liable under the statute.

To the extent that the Does' claim against the School District is based on Shockro's misconduct, defendants argue that it is inapplicable for two reasons. First, they cite the general rule that public employers are not liable for the intentional torts of their employees. Second, they argue that Shockro's alleged sexual mis-

---

**5.** M.G.L. c. 258 § 2 provides, in relevant part, that:

[t]he remedies provided in this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee ... whose negligent or

wrongful act or omission gave rise to such claim, and no such public employee ... shall be liable for any injury ... caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.

conduct—although some of it occurred on school grounds—was not done within the scope of his employment, as required for recovery under § 2.

The Does allege that the School District breached its duty to prevent or mitigate Shockro's sexual abuse of Jane Doe. They argue that Walsh and Gardner originally caused the harmful condition or situation because they were aware that Shockro sexually assaulted another female student in 1995 and took no corrective measures to limit Shockro's access to female students. They attempt to distinguish their case from *Armstrong v. Lamy*, 938 F.Supp. at 1029–30 (granting summary judgment in favor of town and school officials on MTCA claim that they failed to protect student who had been sexually assaulted by music teacher) by contending that the plaintiff there presented no evidence that the municipal defendants had any knowledge of any sexual misconduct by the teacher prior to being hired or during his time at school.

In *Brum v. Town of Dartmouth*, 428 Mass. at 696, 704 N.E.2d 1147, the Supreme Judicial Court held that § 10(j) forecloses liability "for failures to preclude or diminish harm," and that "to interpret ... 'originally caused' conditions, to include conditions that are, in effect, failures to prevent harm, would undermine that principal purpose." Despite a conclusory allegation in their opposition to the motion to dismiss, the complaint does not allege that the School District was negligent in hiring Shockro or that it knew at the time of hire that he had a prior criminal record. Moreover, it cannot be said that Shockro's alleged abuse of Jane Doe was made in the "scope of his office or employment" as interpreted by the SJC in *Armstrong*, 938 F.Supp. at 1045. That some of the alleged abuse occurred on School District property does not mean that Shockro's acts came within the scope of his employment—that is, that it was associated in any material way with the work he was hired to perform or was motivated by a purpose to serve his employer. *See* 938 F.Supp. at

1045. Accordingly, defendants' motion to dismiss Count III is granted for the same reasons as in *Armstrong. See* 938 F.Supp. at 1044–45. There, the court held that § 10(j) barred liability under MTCA for a city whose high school failed to train, supervise, regulate, control, or correct a teacher who sexually abused a student over a period of sixteen months because it did not originally cause the abuse and that § 2 barred the city's liability under the statute for the negligent acts of its employee because the abuse was not within the scope of the employee's office or employment.

■ The Does' claim that the School District breached its duty to prevent or mitigate the harassment directed at Jane Doe is barred by § 10(j) for the same reason. Even if the School District ignored the Does' complaints about harassment by other students, there are no allegations that it "originally caused" the students to harass Jane Doe. Accordingly, defendants' motion to dismiss Count IV is granted.

In sum, the defendants' motion to dismiss is granted as to Counts III and IV and denied as to Counts II and V.

It is so ordered.