# United States Court of Appeals
## For the First Circuit

No. 01-1301

JAMES W. CUMMINGS AND DEBORAH CUMMINGS,

Plaintiffs, Appellants,

v.

POLICE OFFICER ALLEN MCINTIRE,
POLICE CHIEF MICHAEL CHITWOOD,
AND THE CITY OF PORTLAND,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,
Coffin, Senior Circuit Judge,
and Young,* District Judge.

Michael J. Waxman for appellants.
Mark E. Dunlap, with whom Norman, Hanson & DeTroy was on brief, for appellees.

_____
*Of the District of Massachusetts, sitting by designation.

November 16, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** Appellant James Cummings brought this suit under 42 U.S.C. § 1983 claiming that his right to substantive due process was violated when appellee Allen McIntire, an on-duty police officer, allegedly struck him unjustifiably as Cummings asked for street directions. The district court granted summary judgment for all defendants.[1] It concluded that McIntire's conduct - though deplorable, unprofessional and offensive - did not "shock the conscience," and thus fell short of establishing a constitutional violation. We affirm.

## I. <u>Factual Background</u>

---

[1] The suit was brought by Cummings and his wife, Deborah, against McIntire, Portland Police Chief Michael Chitwood, and the City of Portland. The magistrate judge recommended granting summary judgment for the city and police chief, but concluded that the case should go forward against McIntire. Cummings did not oppose the portion of the recommended decision dismissing the case against the city and police chief, and the district court's adoption of the magistrate judge's recommendation on those parties is thus unreviewable. <u>See</u> Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). Deborah Cummings did not submit argument on the district court's dismissal of her loss of consortium claim, and so we do not consider it, either. <u>See</u> <u>Fletcher</u> v. <u>Town of Clinton</u>, 196 F.3d 41, 55 (1st Cir. 1999). We also do not separately discuss Cummings' state civil rights claim because the parties agree that the outcome is the same under either federal or Maine law. This opinion therefore addresses only Cummings' federal substantive due process claim against McIntire.

The relevant facts are essentially undisputed for purposes of our review,[2] which is de novo. See Underwriters at Lloyd's v. Labarca, 260 F.3d 3, 7 (1st Cir. 2001). On the morning of October 4, 1998, appellee McIntire was assigned with two other uniformed officers to direct traffic at an intersection in Portland, Maine, that was along the route of a road race taking place that day. The corner, where Washington and Ocean avenues cross, was a hectic scene of heavy traffic activity. The officers periodically needed to stop cars or runners; they sometimes allowed both vehicles and runners to move through at the same time and at other times stopped all lanes of traffic to allow the runners to pass. At about 9:20 a.m., appellant Cummings arrived at the intersection looking for Arcadia Street. When he encountered the race, he drove into the parking lot of a nearby convenience store and got out of his car to ask a volunteer for directions. She was busy with the race and unfamiliar with Arcadia Street, and so she directed him to Officer McIntire. Cummings approached the officer, who had stopped cars and was looking right to left to check traffic as runners started to come through the intersection. The district

_____

[2] Defendants reserved the right to dispute the plaintiffs' version of the facts if the case proceeded to trial.

court, borrowing from the factual summary prepared by the magistrate judge, described the ensuing events as follows:

> The officer . . . essentially [had his] back to Cummings, with his head swiveling watching the traffic and runners. Cummings moved only a step forward and began to ask the officer for directions. From behind, Cummings said, "Excuse me sir," waited for perhaps two seconds and repeated, "Excuse me, sir." When no traffic was moving and it was perfectly quiet, Cummings began to ask his question, holding his right arm out straight from his body at approximately a forty-five degree angle. Cummings was standing approximately four feet away from the officer.

To describe what happened next, the district court quoted Cummings' affidavit:

> 18. Before I could complete my question, Officer McIntire turned towards me and shoved me hard toward the far curb of Washington Avenue.
>
> 19. As Officer McIntire shoved me, he was verbally abusive to me. He yelled "IF YOU DON'T HAVE A GODAMMED [sic] EMERGENCY GET THE HELL OUT OF HERE."
>
> 20. The force of the blow propelled me backwards and I twisted violently in an effort to maintain my balance.

Cummings did not fall, but reported that he suffered immediate pain in his left back and left leg and foot. A pre-existing medical condition made his neck vulnerable to fracture and herniation, and he alleged that as a result of McIntire's shove he underwent back surgery and has since "suffered stabbing pain, and permanent impairment."

-4-

Cummings subsequently filed this action alleging deprivation of his right to be free from the use of excessive and unreasonable force pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and analogous Maine constitutional provisions.

The magistrate judge concluded that McIntire's alleged behavior was sufficiently egregious that a jury would be permitted to find that it "shocked the conscience," but he found no evidentiary basis for holding either the police chief or the city responsible for McIntire's conduct.

The district court agreed that McIntire's behavior deserved censure, but disagreed with the magistrate judge's legal conclusion. He termed the conduct "deserving of discipline," but stated that it does not "'shock the conscience' in the way the Supreme Court or the First Circuit has used those terms." The court therefore granted summary judgment for all defendants on all claims. As explained earlier, see note 1 supra, only the substantive due process claim against McIntire is before us.

## II. Discussion

Claims of excessive force by a police officer arising outside the context of a seizure, and thus outside the Fourth Amendment, are analyzed under substantive due process principles. See County of Sacramento v. Lewis, 523 U.S. 833, 843

-5-

(1998); Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996). The dispositive question in such an analysis is whether the challenged conduct was so extreme as to "shock the conscience." Lewis, 523 U.S. at 846-47; Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).

Various formulations have been used to identify conduct sufficiently outrageous to meet that standard, which deliberately was set high to protect the Constitution from demotion to merely "a font of tort law," Lewis, 523 U.S. at 847 n.8, 848 (quoting Daniels v. Williams, 474 U.S. 327, 332 (1986)). Courts have held that the acts must be "such as 'to offend even hardened sensibilities,'" Johnson v. Glick, 481 F.2d 1028, 1033 n.6 (2d Cir. 1973) (citation omitted), "uncivilized[] and intolerable," Hasenfus, 175 F.3d at 72, "offensive to human dignity," Rochin v. California, 342 U.S. 165, 174 (1952), or must constitute force that is brutal, inhumane, or vicious, id.; Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

This is obviously not a standard with precise boundaries, but in its lengthy discussion of substantive due process in Lewis the Supreme Court noted certain uniform principles that do operate: negligent conduct is "categorically beneath the threshold of constitutional due process," while "behavior at the

-6-

other end of the culpability spectrum," i.e., "conduct intended to injure in some way unjustifiable by any government interest," is most likely to support a substantive due process claim. 523 U.S. at 849.[3]  When the culpability resulting in injury falls somewhere between these extremes, it is "a matter for closer calls," id., and whether conduct is actionable as a due process violation will depend upon the context in which it occurs:

> Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking.

Id. at 850.

The Court illustrated the importance of context by contrasting normal pretrial custody with high-speed law enforcement chases.  In the case of a sudden pursuit, with virtually no opportunity for officers to deliberate, much more outrageous behavior would be tolerated than in the typical prison setting, where "forethought about an inmate's welfare is not only feasible but obligatory."  Id. at 851.  Accordingly, "mid-level" fault, such as recklessness or deliberate

---

[3]  The Court noted that "the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."  Lewis, 523 U.S. at 848.

indifference, is insufficient for due process liability in circumstances demanding instant judgment; to obtain redress in a sudden pursuit case, the Court held, a plaintiff must show "intent to harm suspects physically or to worsen their legal plight." Id. at 854. By contrast, deliberate indifference may be enough to shock the conscience where the claim arises from the state's alleged failure to provide those in its custody, say, a prisoner, with decent care and protection. Id. at 851-52.

This is a case whose factual context falls within the middle ground, neither so tense and rapidly evolving as a high-speed police pursuit nor so unhurried and predictable as the ordinary custodial situation. Some courts approach such cases by assessing the facts pursuant to a test formulated by Judge Friendly in Johnson, 481 F.2d at 1033, with which we substantially agree:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

See, e.g., Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1076 (11th Cir. 2000); Petta v. Rivera, 143 F.3d 895, 902 (5th

Cir. 1998); Thompson v. Olson, 798 F.2d 552, 558-59 (lst Cir. 1986).

Appellant argues that liability should attach because Officer McIntire's conduct was at the most reprehensible end of the culpability spectrum; he claims that the shove bespoke an intent to injure that lacked justification. Because such intent suffices to support constitutional liability against officers in even the most stressful circumstances, appellant claims that the district court erred in dismissing his claim.

We are constrained to conclude otherwise. While there is no doubt that McIntire unnecessarily utilized physical force, we agree with the district court that the record does not permit a finding that he did so "maliciously and sadistically for the very purpose of causing harm," Johnson, 481 F.2d at 1033. At the time he acted, McIntire was juggling drivers and runners in a busy location, swiveling his head to be sure no problems arose.[4] In such circumstances, a hard shove accompanied by abusive language, whose evident purpose – as even appellant acknowledges – was to get Cummings out of the way,[5] does not in

---

[4] Although the cars were stopped when appellant approached McIntire, the officer was still obliged to be alert to the traffic and joggers.

[5] In his brief, Cummings notes that McIntire intended to strike him with sufficient force "so as to propel [appellant] out of his space and to send a sharp message about what

our view constitute the "brutal" and "inhumane" conduct necessary to establish a due process violation.

The Due Process Clause is intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression," Lewis, 523 U.S. at 846 (internal citation omitted); here, the officer's action was reactive rather than reflective, seemingly inspired by a "careless or unwise excess of zeal" in communicating his displeasure with Cummings' interruption, rather than by a purpose to harm. See Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981). It is true that appellant suffered a severe injury. The severity of the injury in the ordinary case may be a fair proxy for egregious behavior leading to liability, as Johnson suggests. It is not so much here because plaintiff had an unusual medical condition, making him peculiarly vulnerable.[6] Cf. Shillingford, 634 F.2d at 266 (finding constitutional liability where police officer struck plaintiff in the face with a nightstick, even though only minor injury occurred, because it was "merely

consequences would flow from further interference."

[6] Cummings disputed the assertion in defendants' Statement of Material Facts that he required surgery "[a]s a result of a chronic preexisting condition," but stated in his affidavit that he had undergone cervical spine fusion in 1990 and, as a result, his neck was "vulnerable to fracture, herniation, and to being paralyzed." In his brief, Cummings states that he "just happens to be an eggshell skulled plaintiff."

-10-

fortuitous" that the results of the attack were not "crippling").[7]

A look at the facts underlying other substantive due process claims helps place this case into perspective and reinforces our conclusion that McIntire's conduct was not of constitutional dimension. Among the cases in which plaintiffs have prevailed[8] are those involving a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, see Neal, 229 F.3d at 1076; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, see Morris v. Dearborne, 181 F.3d 657, 668 (5th Cir. 1999); rape by a police officer in connection with a car stop, see Rogers v. City of Little Rock, 152 F.3d 790, 797 (8th Cir. 1998); a 57-day unlawful detention in the face of repeated requests for release, see Armstrong v. Squadrito, 152 F.3d 564, 582 (7th Cir. 1998); police officers aiding a third-party in shooting the plaintiff, see Hemphill v. Schott, 141 F.3d 412, 419 (2d Cir. 1998); an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him, see Johnson, 481 F.2d at 1029-30; and a

_____

[7] If liability were established, the extent of injury would be relevant to damages.

[8] These cases do not address ultimate liability; they review dismissals or grants of summary judgment in favor of defendants.

-11-

principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her, see Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir. 1987). The conduct in these cases, involving serious physical intrusions or sustained abuse, differs markedly from McIntire's isolated, intemperate outburst.

The encounter here has much more the feel of those cases in which courts have rejected due process claims, notwithstanding the contemptible conduct at issue. Defendants prevailed where police officers allegedly engaged in months of harassment and intimidation and pushed one plaintiff, who suffered a miscarriage two days later, see Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623-24 (1st Cir. 2000); a teacher slapped a student a single time in anger and without justification, see Lillard, 76 F.3d at 726; a murder suspect committed suicide after prosecutors encouraged the media to link him to a series of murders, see Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995); and, officers allegedly threatened more than once to kill the plaintiff and told her young children that if the police caught their father they would never see him again, see Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir. 1991).

Plaintiff gives particular emphasis to Shillingford, 634 F.2d at 263, in which a tourist was struck by a police officer

while attempting to photograph the arrest of a Mardi Gras reveler. The tourist was uninvolved in and not interfering with the police action. The officer intentionally struck the tourist's camera with his nightstick, which destroyed the camera and smashed it into the tourist's face, lacerating his forehead. The court found the assault to be sufficiently severe to establish a deprivation of constitutional rights. Id. at 266.

Shillingford offers only limited support for appellant's position. As in that case, the attack here is fairly described as "unprovoked and unjustified," 634 F.2d at 266. But the surrounding circumstances were notably different: unlike in Shillingford, the unjustified conduct was an open-handed shove rather than a direct strike with a weapon. The likely potential for injury from the push was substantially less than for use of the nightstick. In addition, as noted earlier, rather than reflecting a deliberate effort to do harm, the message behind McIntire's conduct was reasonably understood to be simply "get out of my way."

McIntire's violent conduct unquestionably was inconsistent with his public responsibilities as a police officer and deserves condemnation. As a member of law enforcement, he had a particular obligation to exercise restraint, no matter how stressful the circumstances may have felt to him. Yet, to

equate his outburst with such brutal conduct as a rape, a nearly two-month unlawful imprisonment, a shooting, or repeated physical assaults would be to lower the very high threshold for constitutional wrongdoing. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" Lewis, 523 U.S. at 846 (internal citation omitted).

Were we to hold that this level of police officer misconduct was reached by the conduct at issue here, involving bad judgment and vile temper in a situation of some stress, we would go far toward making the due process clause "a surrogate for local tort law or state statutory and administrative remedies," Hasenfus, 175 F.3d at 74. We find the Supreme Court's assessment of the circumstances in Lewis equally applicable here:

> Regardless whether [McIntire]'s behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience . . . .

523 U.S. at 855.

The district court's grant of summary judgment for defendant is therefore affirmed.