Pratt v. Town of Windham                CV-03-321-JD  10/13/04

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Becky Pratt

        v.                                    Civil No. 03-321-JD
                                              Opinion No. 2004 DNH 150
Town of Windham, et al.


O R D E R


Becky Pratt brought a substantive due process claim pursuant to 42 U.S.C. § 1983, along with related state claims, against the Town of Windham, Police Chief Bruce Moeckel, and Detective Wendy Foley, arising from Foley's actions after Pratt's son was sexually abused by a neighbor.  The defendants move for summary judgment on Pratt's federal claim and ask that the court decline supplemental jurisdiction as to the state claims.  Pratt objects to summary judgment.


Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.


## Background[1]

In July of 2002, Becky Pratt lived at the Manor Motel in Windham, New Hampshire, with her four-year-old son, Joey, and her partner, Lori Pratt.[2]  John Golluci, who was a long-time friend of Pratt's, also lived at the Manor Motel.  Pratt, Joey, and

---

[1]Becky Pratt provided a verified complaint, which is considered as an affidavit to the extent it complies with Federal Rule of Civil Procedure 56(e).  See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991).  Because the defendants did not challenge Pratt's use of her complaint, or any part of it, in support of her opposition to summary judgment, they have not preserved their right to object.  Perez v. Volvo Car Corp., 247 F.3d 303, 314 (1st Cir. 2001).  Therefore, the allegations made in the complaint are accepted as true for purposes of the present motion.  The memorandum submitted in opposition to the defendants' motion for summary judgment, titled "Memorandum and Affidavit," is not treated as a second affidavit.  See Fed. R. Civ. P. 56(e).

[2]Becky Pratt was known as Becky El Ghalmi in 2002, and Lori Pratt was known as Lori Presutti.  In 2003, both women changed their names to Pratt.  To avoid confusion, the court will refer to Becky Pratt by her present last name but will use Lori Pratt's former name, Presutti, as Pratt does in her objection.

Presutti had previously lived with Golluci in the same unit at the motel. Golluci often took care of Joey, changing his schedule to be available and calling on a daily basis to offer his services.

Joey stayed with Golluci on the evening of July 13, 2002, while Pratt and Presutti went out. When Pratt picked Joey up at Golluci's unit, Joey told her that Golluci had played a game where he licked Joey all over, including his "butt" and his "winky." Pratt confronted Golluci with Joey's story, and Golluci did not deny it. Pratt did not permit any further contact between Golluci and Joey.

At work, Presutti talked to a friend whose husband was a part-time officer in the Hampton, New Hampshire, Police Department, about Joey's story and other sexually related conduct Joey had displayed. The friend's husband reported the matter to an officer in the Pelham Police Department, who wrote a report and contacted the Windham Police Department. In the report, the Pelham officer identified Presutti as openly gay. Detective Wendy Foley of the Windham Police Department began an investigation of the matter on July 25, 2002.

Detective Foley contacted Pratt and Presutti on July 25 and asked to interview them. Foley was familiar with the motel because she had responded to reports of criminal activity there,

and she was then conducting an investigation of possible drug distribution at the motel. Foley interviewed Pratt and Joey at their motel unit and interviewed Presutti by telephone. On July 26, 2002, Foley talked with the motel manager. When the manager identified both Pratt and Presutti as Joey's mothers, Foley rolled her eyes, which the manager interpreted as disgust with their relationship.

Detective Foley arranged to have Joey interviewed by a specialist at the Seacoast Child Advocacy Center in Portsmouth, New Hampshire, on July 26, 2002. Timothy Harrington, the Senior Assistant County Attorney, met with Pratt and Presutti, along with Detective Foley, at the time of Joey's interview. Afterwards, the interviewer, Harrington, and Foley expressed concerns about Joey's living situation. Pratt and Presutti explained that they were trying to find an apartment but were having difficulty because of their lack of financial resources.

Foley told Pratt that it would take about a week before Golluci was arrested. Foley said that their living situation at the motel was unsafe and inadequate and that Joey should not be taken back there. Foley also said that she would try to arrange alternative housing through the town. Pratt remembers that Foley told them Joey could not stay with Presutti's mother or travel to Florida with Presutti's brother because they were not his blood

4

relatives. Foley told Pratt and Presutti that she would have to report their living conditions to the New Hampshire Division of Children, Youth, and Families ("DCYF") and request an emergency placement if they did not find an alternative place for Joey to stay. Pratt and Presutti were very upset that Joey could not stay with them, but they took him to stay with Pratt's mother.

Foley arranged through the Town of Windham for Pratt, Presutti, and Joey to stay at the Days Inn in Hudson for a week. Pratt refused the offer because she could not afford to pay for the room after the week and thought she would lose her room at the motel, which was prepaid, if she moved to the Days Inn. Pratt and Presutti did not ask to stay at Presutti's brother's home in Nashua, while he was away, because they wanted to have Joey at the motel, which was familiar to him. Several days later, they learned through the motel manager that Golluci had been arrested. When Pratt contacted Detective Foley, Foley said she had filed a report with DCYF and had been instructed to refuse Pratt's request to return Joey to the motel.

Joey stayed with Pratt's mother for ten days. Pratt and Presutti stayed at the motel. They were all very unhappy during the separation. Although Joey coped with the separation during the daytime, at night when he talked with Pratt and Presutti he would ask if he could come home and promise to be a good boy.

5

During that time, Pratt and Presutti found an apartment, which they were able to rent with money borrowed from friends. On August 5, 2002, they moved in with Presutti's grandmother, temporarily, while they waited to get into their apartment. They moved there on August 15, 2002. Pratt later learned that Foley had not filed a report with DCYF.

## Discussion

Pratt contends that the defendants violated her substantive due process rights by ordering her to remove Joey from their home at the motel, which caused great distress. She further contends that Detective Foley was motivated by bias and ill will against Pratt and Presutti because of their sexual orientation. The defendants move for summary judgment on the federal claim, asserting that Detective Foley is entitled to qualified immunity, that Pratt has not stated a claim against the chief of police or the town, and that the facts do not support a substantive due process claim. The defendants also ask the court to decline supplemental jurisdiction as to the state claims.

When addressing a qualified immunity defense, the court considers: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time

6

of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). Because Pratt relies on her verified complaint, the first step in the qualified immunity analysis in this case is not substantially different from a consideration of the claim on the merits.

A.   Substantive Due Process Claim

The First Circuit has recognized substantive due process claims in two circumstances:  when official action violates a protected property or liberty interest or when such action shocks the conscience. Rosenfeld v. Egy, 346 F.3d 11, 15 (1st Cir. 2003). Here, Pratt relies on the conscience-shocking aspect of due process.

Official conduct that is so extreme and egregious as to be conscience-shocking violates substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 846-48 (1998); Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622-23 (1st Cir. 2000). Although the conscience-shocking standard is not precisely defined, certain guidelines have evolved to direct the analysis. Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001). At the two

7

extremes, negligence is not considered to be conscience-shocking while intentional injury without justification is most likely to meet the standard.  Id. (citing Lewis, 523 U.S. at 849).

Actions that are physically intrusive, violent, or violations of a protected relationship are more likely to support a substantive due process claim.  Id. at 644.  In the area between negligent conduct and intentional and unjustified injury, the nature of the conduct and the circumstances in which it occurred will determine whether it is conscience-shocking.  Id. at 344-45; Cruz-Erazo, 212 F.3d at 623-24.  "Courts have held that the acts must be such as to offend even hardened sensibilities, uncivilized and intolerable, offensive to human dignity, or must constitute force that is brutal, inhumane, or vicious."  Cummings, 271 F.3d at 344 (internal citations and quotation marks omitted).  "[T]o establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship."  Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991).

Pratt asserts that Detective Foley falsely told her that a DCYF report had been filed and that Joey could not live at the motel with her and Presutti.  Pratt contends that Foley purposefully misled her to force her to find alternative housing for Joey, not because of any danger to him at the motel, but

8

because she disapproved of the relationship between Pratt and Presutti. Pratt states that she was extremely upset, believed that Joey could not live at the motel, and searched frantically for an alternative living arrangement for Joey. Because she believed she was required to do so, Pratt arranged for Joey to live with his grandmother for ten days, which she contends was a hardship for all concerned. Although Pratt and Presutti visited with Joey during the day, Pratt contends that they suffered because of the separation.

In assessing the circumstances in this case, it is important to note that Joey was not removed from Pratt's custody nor did Detective Foley remove him from his home.[3] Cf. Tower v. Leslie-Brown, 326 F.3d 290, 298 (1st Cir. 2003) (discussing substantive due process in context of removal of children on suspicion of abuse); Suboh v. Dist. Attorney's Office of Suffolk, 298 F.3d 81, 91 (1st Cir. 2002) (discussing substantive due process in context of child custody dispute). Instead, Foley told Pratt not to return Joey to the motel, and she arranged for alternative housing at the Days Inn, to be paid for by the town, where Pratt

---

[3]Interestingly, one of the arrangements Pratt considered was to have Joey join Presutti's brother's family on a two-week vacation in Florida. She faults Foley for opposing that arrangement. If that had happened, however, Pratt and Foley would have had no contact with Joey for the duration of the vacation.

and Presutti could be with Joey while they looked for alternative housing. That arrangement would have maintained the family relationship, rather than have interfered with it. Therefore, Foley's actions do not suggest a bias against Pratt because of her sexual orientation, as she claims, nor any attempt to interfere in their familial relationship.

Further, the circumstances provide justification for telling Pratt not to have Joey live at the motel. In addition to the problem of contact with the abuser, Golluci, Foley was aware of criminal activity at the motel and was then investigating suspected drug distribution there. The living area was small. Foley was not alone in her concerns about Joey's living at the motel since both the specialist who interviewed Joey and the Assistant County Attorney also expressed concerns about Joey's continuing to live there.

Because Detective Foley did not interfere with Pratt's relationship with Joey, nor intentionally cause her distress without justification, nor otherwise engage in conduct that shocks the conscience, no substantive due process violation occurred. Therefore, it is not necessary to consider the remaining elements of qualified immunity nor the lack of evidence to support supervisory and municipal liability. The defendants are entitled to summary judgment on Pratt's federal claim.

10

B. <u>State Claims</u>

When, as here, the court grants summary judgment on the federal claim that was the basis of original jurisdiction before trial, the court may in its discretion decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c). That is appropriate in this case. <u>See</u> <u>Cannarozzi v. Fiumara</u>, 371 F.3d 1, 6 (1st Cir. 2004). Therefore, the court declines supplemental jurisdiction over Pratt's state claims, which are dismissed without prejudice.

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 8) is granted. The court declines to exercise supplemental jurisdiction over the remaining state claims, which are dismissed without prejudice.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 13, 2004

cc: Donald E. Gardner, Esquire
    Jennifer R. Jones, Esquire

11