# United States Court of Appeals
## For the First Circuit

Nos. 06-1720, 06-2228

YVETTE LOCKHART-BEMBERY,

Plaintiff, Appellant/Cross-Appellee,

v.

DANIEL SAURO,

Defendant, Appellee/Cross-Appellant,

TOWN OF WAYLAND POLICE DEPARTMENT; ROBERT IRVING, in his capacity
as Chief of the Wayland Police Department,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Newman,[*] and Lynch,
Circuit Judges.

Andrew M. Fischer, with whom Jason & Fischer was on brief,
for Yvette Lockhart-Bembery.
Leonard H. Kesten, with whom Jeremy Silverfine, Dierdre
Brennan Regan, and Brody, Hardoon, Perkins & Kesten, LLP, were on
brief, for Daniel Sauro.

---

[*] Of the Federal Circuit, sitting by designation.

August 9, 2007

**LYNCH**, **Circuit Judge**.  Routine police assistance to a disabled motorist whose car posed a traffic hazard on a busy road was transmogrified into a civil rights action under 42 U.S.C. § 1983.  The plaintiff alleged, inter alia, that the officer violated her Fourth Amendment rights when he instructed her to move her car or it would be towed, she did so, and she was injured.  She also alleged a violation of her Fourteenth Amendment substantive due process rights on a state-created danger theory.  A jury found an undefined violation of the plaintiff's civil rights.  It attempted to award damages of $0, however, and when told by the judge that such an award was inconsistent with a finding of liability, awarded only $1.  Because the jury awarded $1, the court awarded plaintiff attorney's fees.  On the basis that plaintiff had prevailed on only one of her five claims, the court reduced the requested amount by approximately 73%, to $12,946.

Each side has appealed various rulings.  We cut to the chase.  It is clear on this record that plaintiff, even on her best evidence, does not state a viable § 1983 claim on either a Fourth Amendment or a substantive due process theory.  No properly instructed jury could have found a violation of constitutional rights on the evidence.  The trial court thus erred in not granting defendant Daniel Sauro's post-trial Rule 50(b) motion.  We vacate the judgment against Sauro and the award of attorney's fees to plaintiff, and direct entry of judgment for defendant.

I.

Because our resolution of the case turns on our review of the district court's denial of Sauro's Rule 50(b) motion, we recite the facts in the light most favorable to Lockhart-Bembery. Webber v. Int'l Paper Co., 417 F.3d 229, 233 (1st Cir. 2005).

The facts are these. Before 8:30 a.m. on February 6, 2002, Lockhart-Bembery left her home in Framingham to go to Waltham. Snow was on the ground, although the roads themselves were clear, and the day was cold. Lockhart-Bembery was driving a 1988 Cadillac Seville -- a relatively large car. Traveling eastbound along Route 30, Lockhart-Bembery noticed that her car had lost power, so she coasted along until she found a place to stop at the side of the road. There was an upward incline in the road at the place where Lockhart-Bembery stopped. Lockhart-Bembery testified that "[t]o the best of [her] recollection," she was generally successful in getting all of her car out of the eastbound travel lane.[1]

The place where Lockhart-Bembery stopped was in Natick, mere feet past the border with the neighboring town of Wayland. A curve in Route 30 as it approaches this location from the west limits visibility.

_____

[1] Two other witnesses disputed this. Officer Sauro testified that more than half of the width of Lockhart-Bembery's car was blocking the road. A second witness, a passing motorist, testified that it was impossible to pull completely out of traffic and that three-fourths of the car was jutting into the road.

-4-

After bringing her car to a stop, Lockhart-Bembery concluded that it was not safe for her to remain in her car because she could be hit by an eastbound car. Using a passing driver's telephone, Lockhart-Bembery called AAA for assistance. AAA said that they would arrive shortly, and that her call had "priority" because of the location where she had broken down. Shortly thereafter, another passing motorist observed Lockhart-Bembery's car and thought that Lockhart-Bembery was slumped over the steering wheel of her car.[2] The motorist called the police to report as much.

Sauro, a Wayland police officer, responded within five or ten minutes. Lockhart-Bembery told Sauro that she had called AAA for a tow, and that they had put a priority on her request.

Lockhart-Bembery testified that Sauro then walked around the car and told her to "move the car or it [would] be towed." She responded that she was unable to move the car because it had no power. According to Lockhart-Bembery, Sauro's response was: "No, it doesn't have any power, but just put it in neutral and push it back[,] steering with the steering wheel."

Lockhart-Bembery got into the car to shift it into neutral, then got back out of the car and turned the steering wheel as much as she could. Facing the rear of the vehicle, she then

---

[2] Lockhart-Bembery later told the motorist that she had been checking fuses to see if she could find the source of the problem.

-5-

pushed the car, with the driver's door open, by the frame between the front and rear doors. While doing so, she kept one hand on the steering wheel to try to direct the car. The car rolled slowly back and partway into a driveway with a downward slope. It then came to rest on its own.

Lockhart-Bembery testified that Sauro, who was then using the radio in his car some distance down the road, yelled at her, "That's not where I told you to put it." Lockhart-Bembery asked Sauro where she should put the car, and he responded only with a vague gesture while he continued to talk on the radio. Lockhart-Bembery understood the gesture to mean that she should move her car closer to Sauro's, so she once again began pushing the car. Lockhart-Bembery testified that she was "inside the car" while she pushed it, although she also stated that she was walking with the car when it started to roll. Sauro testified that she was pushing the car from the front bumper area. In any event, this time, the car picked up speed as it rolled backwards down the incline of the driveway. The car dragged Lockhart-Bembery, face-first and face-down, down the hill with it until it collided with some trees and stopped.

Lockhart-Bembery was taken by Medevac helicopter to the hospital. She was later told that she had broken several bones, including at least one rib and her shoulder blade. Lockhart-

Bembery was kept in the hospital overnight for observation because of a risk of head trauma. She was discharged the next morning.

In December 2003, Lockhart-Bembery filed suit against the Wayland Police Department, its Chief, Robert Irving, and Officer Sauro in Massachusetts Superior Court. The suit alleged a § 1983 claim, various state law theories of tort liability, and a violation of Mass. Gen. Laws ch. 12, § 11I, the state civil rights statute. The § 1983 claim was based on multiple theories, including a theory that Sauro had unconstitutionally seized Lockhart-Bembery in violation of her Fourth Amendment rights, and a state-created danger theory that Sauro had violated her Fourteenth Amendment substantive due process rights. The defendants removed the case to federal district court. See 28 U.S.C. § 1441. The defendants eventually moved for summary judgment.

In opposing summary judgment on her § 1983 claim, Lockhart-Bembery affirmatively disclaimed any argument that Officer Sauro had violated her Fourth Amendment rights. She claimed only that there was a triable issue on her state-created danger due process claim. Nonetheless, the Fourth Amendment theory somehow was submitted to the jury.

The district court denied summary judgment on the negligence, state civil rights act, and § 1983 claims.[3] The court further denied qualified immunity to Sauro on the § 1983 claim.

The case was tried before a jury. As to Lockhart-Bembery's Fourth Amendment theory, the court instructed the jurors:

> The Fourth Amendment of the United States Constitution provides [that] "the right [of] the people to be secure in their persons, houses, papers[,] and effects against unreasonable searches and seizures shall not be violated." To prove . . . her Section 1983 claim, the plaintiff must prove . . . that Mr. Sauro violated her right to be secure in her person by ordering her to push her car in the circumstances that existed on February 6, 2002.

As to Lockhart-Bembery's Fourteenth Amendment due process theory, the court's instructions offered the jurors what appeared to be two separate theories of liability:

> [T]he Fourteenth Amendment of the United States Constitution [protects] the right to be free from and to obtain judicial relief for unjustified intrusions on personal security. If you find that the Defendant Mr. Sauro ordered the plaintiff to push her car farther off the road and that he did so in violation of her right to be secure in her person, then you may find that the defendant deprived the plaintiff of her Fourteenth Amendment right to due process of law.

---

[3] The district court granted summary judgment on the remainder of Lockhart-Bembery's state law claims, including the only two claims, for negligent supervision, alleged against the Police Department and the Chief of Police. The Town of Wayland remained a defendant in the case, presumably under the theory that it would indemnify Sauro should he be found liable for damages.

-8-

> [Additionally], the plaintiff . . . claims that Mr. Sauro's action constituted a state-created danger which caused harm to her. . . . A citizen has a constitutional right to be protected from such harm. A state-created danger occurs when an officer, through an affirmative action, increases the threat of harm to an individual. If you find that . . . Mr. Sauro, while acting in his capacity as a Wayland police officer, took an affirmative action that placed the plaintiff in a worse position of danger than if he had not acted at all, then you may find that Mr. Sauro's actions constituted a state-created danger.

Following the charge, Sauro's attorney objected to the instructions that if the jury found that Sauro had ordered Lockhart-Bembery to move her car, they could find a violation. The court overruled the objection.

The verdict form did not distinguish between plaintiff's Fourth Amendment and due process theories on her § 1983 claim. It merely asked whether the plaintiff's civil rights had been violated.[4] The jury answered "yes" to that question, although it also concluded that plaintiff had not made out her state law civil

---

[4] Lockhart-Bembery's counsel also referred to his client's race in closing argument, saying, "[Defendant's counsel] says, well, why would he [Sauro] do that. Well, maybe because she's black. Maybe because she's wearing a veil." There was, however, no discrimination claim made in this case.

rights claim.[5]   The jury rejected Lockhart-Bembery's state law negligence claim.

As an initial matter, the jury awarded zero dollars in damages.  The district court informed the jury that a zero damages award was not consistent with a finding of liability on the § 1983 claim.  Fifteen minutes later, the jury returned with a nominal damages award of $1.

Each side filed a post-trial motion.  Sauro filed a Rule 50(b) motion arguing, inter alia, that he was entitled to judgment as a matter of law on the § 1983 claim.  The district court denied the motion.  The court reasoned that there was sufficient evidence of a Fourth Amendment seizure, as a reasonable person in Lockhart-Bembery's situation would not have felt free to leave her encounter with Sauro or to disobey his "order" to move the car.  The court stated that even if Sauro's actions fell within the community caretaking doctrine of the Fourth Amendment, they were not necessarily reasonable.  The court stated that the question of whether Sauro's actions were reasonable was one for the jury; the implication was that the evidence was sufficient to support a finding that Sauro had not acted reasonably.  The court also held

---

[5]    The court had correctly instructed the jury that it could not find a state law civil rights violation unless the interference with Lockhart-Bembery's civil rights was the result of "threats, intimidation[,] or coercion."  The jury concluded that Sauro had violated Lockhart-Bembery's federal constitutional rights, but that this violation did not involve threats, intimidation, or coercion.

that the evidence was sufficient to show a due process violation pursuant to the state-created danger theory. This was so because Sauro's actions "could have been found to create or increase the danger to plaintiff." Finally, the court rejected Sauro's claim that he was entitled to qualified immunity.

The court also rejected the parties' arguments that a new trial was needed on § 1983 liability (as Sauro had argued) or damages (as Lockhart-Bembery had argued). Additionally, the court disagreed with Lockhart-Bembery's claim that the verdict on the negligence claim was inconsistent with the verdict on the § 1983 claim. The court did award plaintiff about 27% of the attorneys' fees that she had requested. Both sides appealed.

## II.

We review the denial of Sauro's Rule 50(b) motion de novo, viewing the evidence in the light most favorable to Lockhart-Bembery. Webber, 417 F.3d at 233. Because Lockhart-Bembery's claim was brought under § 1983, the verdict for her may stand only if there was evidence that Sauro violated her constitutional rights. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979) ("It is for violations of . . . constitutional and statutory rights that 42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."); see also

-11-

Wilson v. City of Boston, 421 F.3d 45, 53-54 (1st Cir. 2005) (considering first, in a case with a similar procedural posture, whether there was a constitutional violation). There was no such evidence.

A.        The Fourth Amendment Claim

We begin with Lockhart-Bembery's Fourth Amendment theory. Lockhart-Bembery affirmatively abandoned her Fourth Amendment theory in the course of opposing summary judgment, and that should have disposed of the claim. Since the jury was nonetheless asked to address it, however, we reach the issue.

The district court erred as a matter of law in denying Sauro's Rule 50 motion on the Fourth Amendment theory of liability. Our analysis of Lockhart-Bembery's Fourth Amendment claim is governed by the community caretaking doctrine set forth in Cady v. Dombrowski, 413 U.S. 433 (1973). In Cady, the Supreme Court recognized that warrantless searches and seizures of a car can be permissible under the Fourth Amendment when they stem from "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 441. As this court has said, the "community caretaking" label "is a catchall for [a] wide range of [police] responsibilities," and it squarely includes "[d]ealing with vehicle-related problems." United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991).

The question, then, is not, as the district court stated, whether there was a seizure. The district court apparently focused on Lockhart-Bembery's state of mind in determining that there had been a seizure. This focus apparently was based on language from United States v. Mendenhall, 446 U.S. 544 (1980), stating that a person has been "seized" if "a reasonable person would have believed that he was not free to leave." Id. at 554. But under the community caretaking doctrine, police action can be constitutional notwithstanding the fact that it constitutes a seizure. See Rodriguez-Morales, 929 F.3d at 785.

The imperatives of the Fourth Amendment are satisfied in connection with the performance of non-investigatory duties, including community caretaking tasks, so long as the procedure involved and its implementation are reasonable. Id. The community caretaking doctrine gives officers a great deal of flexibility in how they carry out their community caretaking function. See id. The ultimate inquiry is whether, under the circumstances, the officer acted "within the realm of reason." Id. at 786; see also United States v. Coccia, 446 F.3d 233, 239 (1st Cir. 2006) ("[I]mpoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impound decision was reasonable under the circumstances."). Reasonableness does not depend on any particular factor; the court must take into account the various facts of the case at hand. See Coccia, 446 F.3d at

-13-

239-40. No reasonable finder of fact could have found that Sauro's actions were not within the realm of reason.

Lockhart-Bembery argues that Sauro acted unreasonably when, knowing that the activity was potentially dangerous, he "ordered" her to push her car. The "order" that Lockhart-Bembery refers to is Sauro's statement that if she did not move her car, it would be towed, his subsequent explanation to her of how she could move the car when it lacked power, and his vague hand gesture indicating to where she should move the car. She testified that she believed that the car, if not moved, would be "towed by the police. Consequently, it could be impounded or it could be taken to a garage that [she] had no way of knowing where it would be." That plaintiff did not want to suffer the inconvenience of having her car towed was understandable. Even if the officer's actions were viewed as an order that she take steps to move her car into a position in which it would pose less of a risk to others, however, this was not a seizure. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); United States v. Smith, 423 F.3d 25, 28 (1st Cir. 2005) ("In order to find a seizure, . . . we must be

able to conclude that coercion, not voluntary compliance, most accurately describes the encounter.").

Even if it were a seizure, it was plainly not unreasonable. Police are entitled to remove disabled vehicles from the streets in order to protect public safety and ensure the smooth flow of traffic. See South Dakota v. Opperman, 428 U.S. 364, 369 (1976); Coccia, 446 F.3d at 238; Rodriguez-Morales, 929 F.2d at 785-86. Here, the evidence compelled a finding that there was a legitimate safety concern. Lockhart-Bembery conceded that her car was extremely close to the eastbound travel lane and posed a safety hazard.[6] See Rodriguez-Morales, 929 F.2d at 785 (recognizing that safety concerns are implicated when a car is on the shoulder of a highway). That concern was heightened here because the car was located at a curve in the road, and so visibility was reduced for approaching vehicles. Lockhart-Bembery herself testified that she stepped out of her car because she feared it would be unsafe for her to remain inside.

---

[6] Although not necessary to our holding, it is also true that there was not even a hint that Sauro's true motive was to look for evidence of a crime. See Rodriguez-Morales, 929 F.2d at 787 ("As long as impoundment pursuant to the community-caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the seizure."); cf. Colorado v. Bertine, 479 U.S. 367, 372-73 (1987) (finding an inventory search to be reasonable, and hence constitutional, in part because there was no showing that the police had "acted in bad faith or for the sole purpose of investigation").

To the extent Lockhart-Bembery argues that Sauro acted unreasonably because there were other, less intrusive ways to reduce the safety hazard, that argument fails as a matter of law.[7] There is no requirement that officers must select the least intrusive means of fulfilling community caretaking responsibilities. Colorado v. Bertine, 479 U.S. 367, 373-74 (1987); Rodriguez-Morales, 929 F.2d at 786. In Rodriguez-Morales, an officer discovered that an individual was driving with an expired license, and he required the individual to drive the car to the impound lot (accompanied by the officer), although other options were available. 929 F.2d at 782-83. The actions Sauro took here were within the realm of reason, regardless of whether alternative reasonable options were also available.

We conclude that Sauro's actions were reasonable as a matter of law. If the jury's verdict was based on a Fourth Amendment theory of liability, the verdict was not supported by the evidence.[8]

---

[7]     In particular, Lockhart-Bembery says that Sauro could have directed traffic around the hazard (notwithstanding the fact that this was potentially dangerous for him), and/or that he could have simply waited for AAA to arrive.

[8]     The jury was never instructed on the community caretaking doctrine, nor was it instructed that the issue was not whether Lockhart-Bembery had been seized, but whether Sauro's actions were reasonable within the community caretaking doctrine.

B.        The State-Created Danger Theory

Lockhart-Bembery also argues that the jury's verdict should be upheld because there was sufficient evidence that Sauro violated her substantive due process rights.  This argument is based on a state-created danger theory.  The district court erroneously agreed that plaintiff had stated a viable theory that Sauro "create[d] or increase[d] the danger to plaintiff" and so denied Sauro's Rule 50 motion.

The district court relied on Frances-Colon v. Ramirez, 107 F.3d 62 (1st Cir. 1997), which stated that a substantive due process claim might exist when a "government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant or affirmatively prevents the individual from receiving assistance."  Id. at 64; cf. DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 201 & n.9 (1989) (suggesting, but not explicitly holding, that there can be a state-created danger doctrine).

Even so, Frances-Colon went on to stress that "[a] proximate causal link between a government agent's actions and a personal injury does not, in itself, bring a case out of the realm of tort law and into the domain of constitutional due process."  Id.  As plaintiff concedes, there is a "further and onerous requirement" that the state's actions "shock the conscience of the

-17-

court."[9]  Rivera v. Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005); see also County of Sacramento v. Lewis, 523 U.S. 833, 846-50 (1998) (discussing the shock-the-conscience test); Hasenfus v. LaJeunesse, 175 F.3d 68, 73 (1st Cir. 1999); cf. id. at 74 (distinguishing between conscience-shocking and seriously negligent behavior, and indicating that "manifestly outrageous" behavior qualifies as conscience-shocking).

Lockhart-Bembery's claim fails on both prongs. The state did not create the danger here. The location of plaintiff's car posed a risk to others; it had to be moved. She recognized the risk herself. She had the choice of moving it herself or having the police tow it. She chose to move it herself and injured herself in her second effort to move the car to a place where it would be less of a hazard to others.

As we said in Rivera v. Rhode Island, while this court and the Supreme Court have discussed the state-created danger theory, neither has ever found the theory actionable on the facts given. 402 F.3d at 34-35. Here, there is not even a special relationship between the plaintiff and the state that could arguably give rise to greater duties on the part of the police. See DeShaney, 489 U.S. at 199-201 & n.9; Rivera, 402 F.3d at 38. Even if, dubitante, Sauro rendered Lockhart-Bembery more vulnerable

---

[9]    The jury was not instructed on the second prong of the substantive due process test. Nor was the jury correctly instructed on the state-created danger theory.

-18-

to risk, this still does not create a constitutional duty on the part of the police to protect. Rivera, 402 F.3d at 37-38.

Since, as we have held, Sauro's actions were reasonable, Lockhart-Bembery also cannot make out the second prong of a state-created danger showing. She fails to meet the shock-the-conscience test. Indeed, the jury rejected the claim that Sauro was even negligent.

This court has held on facts far more troubling than those present in this case that plaintiffs have failed to clear the shock-the-conscience hurdle. In Cummings v. McIntire, 271 F.3d 341 (1st Cir. 2001), for example, an officer directing traffic in the middle of the road was approached by a pedestrian asking for directions. Id. at 343. Completely unprovoked, the officer violently shoved the pedestrian; the pedestrian suffered permanent back and leg injuries, and had he fallen in the street, he could have been more seriously injured. Id. We stated that there was "no doubt" that the officer had utilized unnecessary force. Id. at 345. But we held that his actions were not outrageous: his behavior was motivated by safety concerns, and it did not constitute "brutal" and "inhumane" conduct. Id. at 345-46. In Rivera, a teenage murder witness was gunned down on the eve of trial after the prosecution had subpoenaed her testimony and promised to protect her from retribution. 402 F.3d at 30, 37-38. Although it was not necessary to our holding in the case, we noted

that the police conduct did not rise to the requisite level of outrageousness. Id. at 38; see also Cummings, 271 F.3d at 346-47 (collecting First Circuit cases with fact patterns that did not shock the conscience).

There was neither a state-created danger nor conscience-shocking behavior here. If the jury's verdict was based on the state-created danger theory, the verdict was not supported by the evidence.

### III.

Our holding that Sauro was entitled to judgment as a matter of law on the § 1983 claim resolves the remaining issues in this appeal. Lockhart-Bembery is no longer a prevailing party, so she is not entitled to attorneys' fees. See 42 U.S.C. § 1988(b). We need not consider the other issues.

The judgment against defendant entered by the district court and the award of attorney's fees to plaintiff are reversed. Judgment shall enter for defendant Sauro.